Hetzell *v.* Easterly.

[FOURTH DEPARTMENT, GENERAL TERM, at Buffalo, January 7, 1873. *Mullin* and *Talcott*, Justices.]

(*a*) Affirmed by Court of Appeals, on above opinion. *See* 53 *N. Y.* 623.

————————

## JOSEPH HETZELL *vs.* OZEM M. EASTERLY.

A testatrix died seised of two parcels of land. By her will she devised a life estate in one parcel to her husband, remainder to her two daughters. The other parcel she devised to her husband and two daughters, in equal shares. The husband was appointed executor, and empowered and directed to sell the two parcels and invest, and at a certain time divide, the principal of the proceeds in pursuance of the will. The husband caused the parcels of land to be divided into city lots. Subsequently, he conveyed his life interest in a lot and other land in the first parcel to the plaintiff, and soon after, under the power in the will, conveyed to him the fee in the same lot and also in other lots, in both parcels. The husband was superseded, as executor, by order of the surrogate; after which, one of the daughters conveyed her interest in certain lots in both parcels (including those conveyed to the plaintiff) to others, by whom it was transferred to the defendant. A judgment was obtained against the husband, subsequent to the execution and recording of the first deed to the plaintiff, and his life estate in certain lots in the first parcel, and his interest in certain lots in the second parcel (including in each parcel the lots conveyed to the plaintiff) sold upon execution, the defendant receiving the sheriff's deed. At the time of commencing this action, the defendant was in possession of certain lots in both parcels (including a part of those deeded to the plaintiff) under a lease for years, previously made by the executor. The husband, after having been superseded as executor, received letters of administration with the will annexed, and conveyed to the plaintiff a part of the trust property, including the lots conveyed by the second deed.

*Held* 1. That the defendant got no title to the land conveyed by the first deed to the plaintiff; the judgment never having become a lien thereon.

2. That the judgment became a lien on the husband's life estate in the lands in the first parcel, and on his undivided interest in those in the second, unless they had been conveyed to the plaintiff prior to the docketing of the judgment.

3. That the superseding of the letters testamentary did not disqualify the hus-

band from carrying out the power contained in the will. The letters testa
mentary gave him no power over the real estate. That power he got from
the will.

4. That although the power to sell was given to the executor, yet he was in
fact a trustee, and accountable as such, in equity.

5. That the power of the executor to sell continued until all the land was sold;
notwithstanding the title was, by the will, conveyed to the devisees.

6. That the executor having no power, under the will, to lease the lands of his
testatrix, the defendant acquired no interest in the lands, as lessee, so as to
prevent him from holding adversely as to the interest of the daughters.

*Martin* v. *Martin* (43 *Barb.* 172) overruled.

CONTROVERSY submitted without action, under
section 372 of the Code.

Louisa Easterly was owner of two lots of land in the
city of Auburn, one known as the homestead lot, the
other as the Denis lot, containing in all some seven
acres of land. She died in April, 1866, leaving a last
will and a codicil thereto, which were duly proved be-
fore the surrogate of Cayuga county.

By the will she devised to her husband a life estate
in the homestead lot, and the fee of the land subject to
such life estate, to her two daughters, in equal parts.
The testatrix intending the premises should be occupied
by the father and daughters as a home, and to be
alienated only after the daughters should come of age.

She gave the Denis place in equal parts to her hus-
band and her two daughters. She appointed her hus-
band executor of her will and guardian of her children,
and authorized him, after her decease, to sell and con-
vey, both as owner and executor, by deed, the whole or
any part of the Denis lot, and to give a good, sufficient
title thereto, and to invest the proceeds of the shares of
the daughters in good securities, and keep the same in-
vested until they should severally attain the age of
twenty-five years, at which time their shares of said
premises, with the accrued interest, should be paid to
them.

By the codicil, the testatrix authorized her said execu-

tor to sell and convey after her decease, either or both of the two pieces of land above mentioned, and his conveyance should be sufficient to convey a good title, and to invest the proceeds in any way that he might deem advantageous to the interests of the children and himself.

The husband took upon himself the duties of the said trust. In order to obtain the best price for said land, he laid out a street upon it called Easterly Avenue, and divided the said lands into lots. The homestead lot was subdivided into lots numbered 1, 2, 3, 4, 5, 6, 7, 8, 22, 23, 24, and parts 19, 20 and 21, and a strip lying south of No. 8, which is not numbered. The Denis lot was subdivided into lots numbered 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, and parts of lots 19, 20 and 21.

Prior to August 2, 1869, said executor had conveyed, pursuant to the power contained in said will, lots Nos. 1, 2, 3, 4, 5 and 23, parts of the homestead lot, and Nos. 9, 14 and 19 of the Denis lot, and for which he received about $15,000, and invested the same as required by said will.

February 10, 1869, the executor conveyed to the plaintiff his life estate in lot No. 8, and in the land lying between it and the north line of the Denis lot; and on the 30th May he conveyed to the plaintiff, as executor, the fee in lot No. 8, and also in lots Nos. 20, 22 and 24 of the homestead lot, and in lots Nos. 12, 13, 18 and part of 20 from the Denis land. In August, 1869, after both the daughters became of age, and after one of them had married, an application was made on their behalf to the surrogate of Cayuga county, to supersede the letters testamentary issued to said executor, on the ground he had removed from the state. A citation was duly issued, and such proceedings thereupon had, that an order was made by said surrogate requiring the executor to file a bond with sureties within five days, in the penalty of $75,000, and if he failed to comply, that his letters testamentary be superseded. It was alleged in the petition

that the executor had received in cash or bonds and mortgages on the sale of said lands exceeding $15,000, and the lands unsold were worth $40,000, and the whole estate going into his hands exceeded $50,000 in value. The executor did not give the bond as required, and the special surrogate, in the absence of the surrogate from the state, issued a final order superseding him.

On the 16th April, 1870, Anna L. Easterly, one of the daughters of the testatrix, conveyed all her interest in lots Nos. 6, 8, 12, 13, 15, 16, 17, 18, 20 and 24, and they were afterwards conveyed to the defendant. All of the persons through whom said lots passed were cognizant of the facts herein stated relating to the same, except that they did not know of the conveyance by Easterly of his life estate to the plaintiff in lot No. 8, that deed not being recorded.

A judgment was obtained against Easterly, personally, subsequently to the deed last mentioned, which was given February 10, 1869, and execution issued thereon, and his life estate in lots 6 and 8, and his undivided interest in lots Nos. 10, 11, 12, 13, 15, 16, 17, 18 and 20 sold. When this sale was made, the deed of February 10, 1869, was on record. Subsequently the sheriff deeded the lands so sold, to the defendant in this action.

It is said in the case agreed upon by the parties, that before Easterly left for Tennessee (but when that was did not appear) he leased lots 8, 10, 11, 12, 13, 16, 17, 18, 19, 20 and 21 to the defendant for three years from May 1, 1869, and put him (defendant) into possession thereof.

Soon after the order superseding the letters testamentary, the executor returned from Tennessee, and received from the surrogate letters of administration, with the will annexed, under which he thereafter administered the personal estate, and continued to act under the power contained in said will and codicil, and sold and conveyed to the plaintiff a large portion of the trust estate that

remained unsold, by two deeds, one dated April 21, 1870, and the other May 30, 1870, for which he received about $22,000. The last deed conveyed lots Nos. 8, 12, 13, 18, 20, 22 and 24.

On these facts the plaintiff claimed to recover the life estate of Easterly by virtue of his deeds of the 10th February, 1869, and May 30, 1870. And the court was asked to decide, 1st. Whether the sheriff's deed to the defendant, of September, 1871, defeated the plaintiff's title to lot No. 8, under his unrecorded deed of February 10, 1869.

2d. If it did, then whether it defeated the plaintiff's title under the deed of May 30, 1870, conveying a fee under the title.

3d. Whether the defendant was entitled to a life estate absolute in lots Nos. 6 and 8 during the life of Easterly, under the sheriff's deed; or, did he only become subrogated and succeed to the equitable interests of Easterly, being a title therein subject to the power of sale contained in the will, as executed by deed of May 30, 1869. The court was called upon to decide several other propositions, which are noticed in their order in the opinion.

*Whitney & Lawrence*, for the plaintiff, cited 1 *Hare*, 547; *Keirsted* v. *Avery*, (4 *Paige*, 15;) *Jackson* v. *Town*, (4 *Cowen*, 606;) *Tallman* v. *Farley*, (1 *Barb*, 380;) *Raynor* v. *Williams*, (6 *Hill*, 473;) *Gillig* v. *Maas*, (28 *N. Y.* 209;) *Morris* v. *Mowatt*, (2 *Paige*, 590;) *Jackson* v. *Terry*, (13 *John.* 471;) *Jackson* v. *Dubois*, (4 *id.* 216;) *Crittenden* v. *Fairchild*, (41 *N. Y.* 289, 290;) *Kinnier* v. *Rogers*, (42 *id.* 531, 532;) *Wood* v. *Wood*, (4 *Paige*, 299;) *Mandeville* v. *Mandeville*, (3 *Paine*, 175;) *Williams* v. *Conrad*, (30 *Barb.* 532;) *Conklin* v. *Edgerton*, (21 *Wend.* 430, 437 *to* 445;) *Dominick* v. *Michael*, (4 *Sandf.* 374, 397 *to* 408;) *Roome* v. *Phillips*, (27 *N. Y.* 363;) *Newton* v. *Bronson*, (13 *id.* 587, 592;) *Bolton* v. *Jacks*, (6 *Rob.* 228;) *Doolittle* v. *Lewis*, (7 *John. Ch.* 45; 3 *R. S.*, 5*th ed.*,

157, § 21 ; *Dayton on Surr.*, 3*d ed.*, 647 ;) *Harrington* v. *People*, (6 *Barb.* 607, 610 ;) *People* v. *Cassels*, (5 *Hill*, 168 ; 1 *R. S.*, 5*th ed.*, 389, §§ 18, 19 ;) *Williams* v. *Carroll*, (30 *Barb.* 526 ;) *Miller* v. *March*, (8 *Barr*, 417 ; 2 *Atk.* 88 ;) *Alexander* v. *Alexander*, (2 *Ves.* 643 ;) *Hawkins* v. *Kemp*, (3 *East*, 410 ;) *Bergen* v. *Duff*, (4 *John. Ch.* 367 ; *Sugd. on Powers*, 2*d ed.*, 167 ; *Redf. on Wills*, 2*d ed.*, 688–9, *notes* 11, 12 ;) *Skinner* v. *Quin*, (43 *N. Y.* 99 ;) *Jackson* v. *Burtis*, (14 *John.* 399 ;) *Bergen* v. *Bennett*, (1 *Caines' Cas.* 1 ;) *Tompkins* v. *Osgood*, (14 *John.* 527 ;) *Quackenboss* v. *Southwick*, (41 *N. Y.* 117 ; 14 *John.* 527, 564 ;) *Bradish* v. *Gibbs*, (3 *John. Ch.* 550 ;) *Marlborough* v. *Godolphin*, (2 *Ves.* 78 ;) *Cook* v. *Duckenfield*, (2 *Atk.* 562 ;) *Reed* v. *Underwood*, (12 *Barb.* 113 ; 4 *Kent's Com.* 355 ;) *Downing* v. *Marshall*, (23 *N. Y.* 379, 380 ; *N. Y. Dry Dock Co.* v. *Stillman*, (30 *id.* 182 ; 3 *R. S.*, 5*th ed.*, 20, § 127 ; 5 *Mass.* 242 ; *Willis* v. *Sherral*, (1 *Atk.* 479 ; 4 *Kent's Com.*, 7*th ed.*, 555–6, *and cases cited;* 1 *Am. Law Reg.* 410 ;) *Tilford* v. *Fleming*, (64 *Penn.* 300 ;) *Bennet* v. *Thompson*, (7 *Durn. & East*, 488 ; 1 *Taunt.* 288 ;) *Jackson* v. *Harper*, (5 *Wend.* 248 ;) *Jackson* v. *Scissam*, (3 *John.* 499 ;) *Love* v. *Simms*, (9 *Wheat.* 515 ; 4 *John.* 210 ;) *Jackson* v. *De Walts*, (7 *id.* 158 ;) *Brown* v. *Porter*, (7 *Wend.* 108 ;) *Despard* v. *Walbridge*, (15 *N. Y.* 377 ; 3 *R. S.*, 5*th ed.*, 27, §§ 139, 140 ; *Willard's Eq.* 84 ; 2 *Paige*, 130 ; 11 *Vesey*, 148 ; 6 *Paige*, 553 ; 2 *Sweeney*, 744–6.)

*B. F. Chase*, for the defendant, cited *Jackson* v. *Chamberlain*, (8 *Wend.* 620 ;) *Jackson* v. *Given*, (8 *John.* 127 ;) *Varick* v. *Briggs*, (6 *Paige*, 323 ;) *Reed* v. *Underhill*, (12 *Barb.* 113 ;) *Jackson* v. *Rowland*, (6 *Wend.* 660 ;) *Farmers' Loan and Trust Co.* v. *Carroll*, (5 *Barb.* 613, 653 ;) *Quin* v. *Skinner*, (49 *id.* 128 ; 43 *N. Y.* 99 ; 1 *R. S.*, 5*th ed.*, 389, §§ 18, 19.)

*By the Court*, MULLIN, P. J. The deed of Easterly, of February 10, 1869, conveyed to the plaintiff his life

estate in lot No. 8, part of the homestead lot. This deed was recorded, and on May 30th, Easterly, as trustee under the will, conveyed to the plaintiff lot 8, and other lots on the homestead and Denis lots, in fee. Subsequent to making, delivering and recording of the above mentioned deed of February 10, 1869, the judgment against Easterly was obtained, on the sale under which the defendant acquired his title to Easterly's life estate in lots 6 and 8, and the fee in certain other lots herein before described.

Upon this state of facts, the defendant got no title, under the sale on the execution, to the lands covered by the deed of February 10, 1869. The judgment never became a lien on them, as the title was out of Easterly before it was docketed.

We are not informed when the judgment against Easterly was docketed, and it is not said in the case whether that judgment became a lien on the lands conveyed by the trustee's deed of May 30, 1870. All that is said on the subject is, that at the time of the sheriff's sale in June, 1870, the deed of May, 1870, was on record.

The life estate being conveyed to the plaintiff before the judgment, the trustee still held the fee in lots Nos. 8, 20, 22 and 24 of the homestead part.

Easterly's life estate in lots Nos. 20, 22 and 24 of the homestead lots, was subject to be taken on execution on personal judgments against him, and the defendant did acquire the life estate in those lots under the sale by the sheriff, if the judgment became a lien prior to Easterly's deed to the plaintiff of May 30, 1870.

Not being informed when this judgment became a lien on the interest of Easterly in those lots, we are unable to give a more definite opinion on the question whether those lots passed to the defendant by the sale by the sheriff.

If the sale to the plaintiff of the above mentioned lots in the homestead part of the lands was made before the docketing of the judgment, the plaintiff has title in fee

by virtue of his deed from Easterly as trustee under the will. If the judgment became a lien on the life estate prior to that conveyance, the defendant took the title subject, nominally, to the power of the trustee to sell the lots, but he could not sell so as to divest the title of the defendant to the use of the lots during the life of Easterly.

The defendant owned an undivided third part of the lots on the Denis lot. These were subject to be seized and sold on execution against Easterly, unless they had been conveyed to the plaintiff before the judgment was docketed. He did convey on the 30th of May, 1870, as trustee under the will, lots 12, 13, 18 and part of 20, and the plaintiff took title in fee to them, unless the judgment was a lien. If it was a lien, the defendant acquired title to the undivided third of them in fee, but nominally subject to the power in the trustee to sell under the power contained in the will. But Easterly could not, after the lien of the judgment attached, sell the land so as to deprive the defendant of the title acquired by virtue of his purchase at the sale of the sheriff.

The next question on which the decision of the court is sought is, whether the letters testamentary granted to Easterly were superseded. If so, was he thereby disqualified from executing the power of sale conferred upon him by the terms of the will.

The letters testamentary gave Easterly no power over the real estate. That he got from the will. Superseding them could not take away or impair his power as trustee under the will. Although the power to sell is given to the executor, yet he is in fact a trustee, and accountable as such, in equity.

The next question on which our decision is desired is as to the effect, if any, of the sale by one of the daughters, on the power of sale given to Easterly by the will and codicil, and what interest the purchaser took by virtue of the conveyance by her. The will did not cre-

ate a trust in Easterly in the land. The title passed on the death of the testatrix to the devisees, subject to the power in trust given to the executor to sell.

The will forbade the sale of the homestead until both daughters were married; but by the codicil the executor was given the right to sell both that and the Denis lot, at any time after the death of the testatrix.

By another clause of the will the executor was required to invest the proceeds of the sale made by him, and to pay one half thereof, with the accrued interest, to each of the daughters on her becoming twenty-five years of age.

The testatrix contemplated a sale of the whole real estate by the executor, and a division of the proceeds amongst those entitled to a share of the same under the will.

The power of the executor to sell continued until the whole land was sold, notwithstanding the title was by the will conveyed to the devisees. (*Crittenden* v. *Fairchild*, 41 *N. Y.* 289. *Kinnier* v. *Rogers*, 42 *id.* 531.)

The case of *Martin* v. *Martin*, (43 *Barb.* 172,) which holds that the power to sell terminated on the children's attaining the age of twenty-one years, cannot be law.

The devisees took subject to the power in the executor to sell; and hence if either of the children sold her share, the grantor took the title subject to be defeated by a sale by the executor, and it was defeated as to such of the lots as have been sold by the executor under the power.

Every person dealing with the land is charged with notice of the contents of the will, and the nature and extent of the interest of the several devisees therein.

I am unable to discover that the commencement of proceedings by the trustee, to partition the lands, had or has any effect whatever on the rights of the parties interested in said land. The proceedings were abandoned after a defence was put in, and nothing has been

done in the action since. The case says that the executor abandoned it. It is not suggested that such a suit thus abandoned could in any way affect the rights of the parties.

We are also called upon to determine whether or not the defendant, having entered into possession of certain lands as the tenant of the executor, can set up an adverse possession in himself, as against his lessor or his grantee.

He could not be heard to dispute the title of his landlord in an action by the latter to recover rent or the possession of the demised premises.

But the executor had no power to lease the lands, and the defendant acquired no interest in them by virtue of the lease. He may have taken an interest in the share of the Denis land which the defendant owned, but he could give no interest in the shares of the daughters. The grantee of the daughters would hold discharged of the lease.

Judgment is ordered in conformity to the foregoing opinion, without costs to either party.

Judgment accordingly.

[FOURTH DEPARTMENT, GENERAL TERM, at Buffalo, January 7, 1873. *Mullin, Talcott* and *E. D. Smith*, Justices.]