Vaughan, J.
This controversy comes before us upon an agreed statement of facts submitted pursuant to sections 546-548 of the Civil Practice Act. The controversy submitted involves (1) the marketability of the title of land contracted to be sold by plaintiff to defendant, and (2) the interpretation of a restrictive covenant contained in the deeds to plaintiff and his predecessors in title. The stipulated facts pertinent to *473 this discussion disclose that one George Hatfield at the time of his death on June 14, 1907, and prior thereto was seized in fee of a farm of approximately 200 acres, the real estate covered by the sales contract entered into between the parties hereto being a portion thereof. He also owned certain other real estate with which we are not particularly concerned. He left a will which was duly probated on July 7,1907. On the following day letters testamentary were issued to Charles W. Hatfield, Albert R. Hatfield and Ella M. Hatfield, the executors named in the will.
Decedent’s personal property, according to the State transfer tax proceeding, had a value of $95,489.23 and his real property is appraised at $46,125. Decedent by his will bequeathed all of his household goods to his wife, left her the life use of the home and upon her death, the same to go to his six children in equal shares-. He set up a trust for the benefit of his wife with directions to his executors to pay out of the income thereof, an amiuity of $1,000 payable in quarterly payments, all income above that required to pay the annuity to go to his six children in equal shares and upon his wife’s death the corpus of the trust and any accumulations thereon to be divided equally among his six children. The will then provides: “Fourth: All the rest, residue and remainder of my property and estate, real and personal and wheresoever situate, I give, bequeath and devise in equal shares and in severalty unto my aforesaid children, Charles W. Hatfield, Ella M. Hatfield, Carrie E. Ottman, Phebe A. Woodard, Albert R. Hatfield and Fannie M. Hatfield.”
It was further provided that in the event any of his children should die prior to the testator’s death, the share so given to such child should go to his or her heirs at law per stirpes. He appointed three of his children, Charles W. Hatfield, Albert R. Hatfield and Ella M. Hatfield his executors ‘ ‘ giving and granting unto them and unto the survivor or survivors or successors of them full power and authority to lease, mortgage, sell, grant and convey any and all real estate of which I may die seized and possessed ”. He left surviving his widow and the following named children: Charles W. Hatfield, Ella M. Hatfield, Carrie E. Ottman, Phebe A. Woodard, Albert R. Hatfield and Fannie M. Hatfield. The testator’s widow died October 4, 1914.
Phebe A. Woodard, one of the testator’s children, on February 8,1933, conveyed all of her interest in her father’s estate to Albert R. Hatfield, Jr. Of the remaining children, three *474 were living at the time the stipulation of facts was entered into. They are Frances M. or Frances H. Powell, formerly Fannie M. Hatfield, Carrie E. Ottman and Albert R. Hatfield, the surviving executor of his father’s estate. Ella M. Hatfield, another daughter, died October 7, 1944, leaving a will, by the provisions of which she gave all of her property, both real and personal, to her sister, Frances H. Powell, and appointed her executrix. Charles W. Hatfield, a son, died June 1,1932, leaving a will in which he gave the life use of all his property, both real and personal, to his wife, Jennie C. Hatfield, and upon her death to his children in equal shares. In the event any of his children predeceased him, the will provided that the share of such child pass to his or her heirs at law. Charles was survived by his widow and five children. His widow was appointed executrix of his will.
Upon petition of Jennie C. Hatfield verified May 25, 1935, the Surrogate of Oneida County made an order directing Albert R. Hatfield and Ella M. Hatfield, the then surviving executors of the estate of George Hatfield, deceased, to render and file their accounts and to appear for the judicial settlement thereof. Following this order, the two surviving executors filed what purported to be an account. The account so filed, however, was not a complete account. It referred to various intermediate accounts that had been submitted from time to time by the executors to the devisees or their representatives who had approved them, the last one to be approved being the so-called intermediate account covering the period from September 15, 1932, to December 31, 1932. This account appears to have been approved by Ella M. Hatfield, Frances H. Powell, Carrie E. Ottman, Jennie C. Hatfield and Albert R. Hatfield, Jr. The account so filed pursuant to the order of the Surrogate was never judicially settled and no other or further account in said estate is on file in the Surrogate’s office so that there has never been a final, formal judicial settlement of the accounts of the executors or of any of them in said estate.
Releases have been executed and filed acknowledging receipt from Ella M. Hatfield and/or Albert R. Hatfield, the sole surviving executor of the last will and testament of George Hatfield, deceased, of their respective distributive shares of the personal property up to March 1, 1945, excepting only the sum of $838.47 on deposit, less $225 allowed Albert R. Hatfield for services by Frances H. Powell, individually, Frances H. Powell, as executrix of the estate of Ella M. Hatfield, Albert R. Hatfield,., Jennie C. Hatfield, as executrix of Charles W. Hatfield, Albert *475 R. Hatfield, Jr., and Carrie E. Ottman. These releases each release the estate of Ella M. Hatfield and Albert R. Hatfield from any further liability as executor or executors for their period of executorship up to March 1, 1945.
The account filed pursuant to the order of the Surrogate on March 9, 1936, contained certain items of disbursements which related solely to the management, rental, upkeep and repair of the farm property of George Hatfield, deceased. From the date of the death of George Hatfield, deceased, on June 14, 1907, and prior to June 23, 1945, the executors of the will of George Hatfield, deceased, or the survivor or survivors thereof, executed and delivered some twenty-six deeds covering various parcels of land owned by the said George Hatfield at the time of his death.
Insofar as the stipulated facts disclose, it appears that in each instance other than the one involving the conveyance in question, when an executor’s deed was given, the surviving children and representatives of deceased children of George Hatfield joined in the deeds of conveyance of parts or parcels of land owned by the said George Hatfield at the time of his death but that at no time have all the surviving children and the representatives of the deceased children joined in a conveyance of all of the lands of the late George Hatfield. It appears that the land in question, by executor’s deed dated June 23, 1945, was conveyed by Albert R. Hatfield as sole surviving executor of the estate of George Hatfield, deceased, to Howard D. Seld and Margaret R. Seld, his wife; that thereafter and on June 25,1945, by quitclaim deed, Albert R. Hatfield, Jr., purported to convey the same premises to Howard D. Seld and his wife.
Thereafter and on April 29, 1948, Howard D. Seld and Margaret R. Seld, his wife, conveyed said premises by warranty deed to Aaron Weinstein, the plaintiff herein.
It further'appears that prior to June 23, 1945, the devisees of George Hatfield and their devisees, heirs at law, next of kin and distributees, representatives and assigns, never, by individual conveyances or by joint conveyance, conveyed the property contracted to be sold by the plaintiff herein to the defendant. The executor’s deed dated June 23, 1945, and the quitclaim deed dated June 25, 1945, conveying the premises in question to Howard D. Seld and his wife, both contained the following restriction:
*476 “ This deed is given and accepted upon the following covenants and restrictions and which are to run with the land; # # *
“ 2. No building shall be erected on said premises other than one detached single family dwelling and a one or two car garage. All costing at least $5,000.”
The warranty deed from Howard D. Seld and Margaret R. Seld to Aaron Weinstein, the plaintiff herein, contained the same covenant and restriction. The lot at the time of its conveyance to Seld and his wife and at the time of their conveyance to Weinstein, the plaintiff herein, was a vacant lot with no buildings thereon. Weinstein, the plaintiff herein, erected thereon a one-family dwelling with garage attached. Various other deeds executed by the executors or the surviving executors of the estate of George Hatfield contained building restrictions similar to the one contained in the deed of June 23, 1945, from the surviving executor to Seld and from Seld to Weinstein. In none of the deeds mentioned in the stipulation of facts does the grantor or grantors agree that they will put the same or similar building restrictions in other deeds to be given by them. When the defendant entered into the contract covering the purchase of the property from Weinstein he was unaware of the restrictions contained in the deed to Weinstein or to Seld.
The solution of the controversy depends, in part, upon the construction of the last will and testament of George Hatfield, deceased. Looking at the will as a whole, the intention of the testator can hardly be mistaken. That intention as appears from paragraphs Fourth and Sixth of testator’s will was to give to his children all of his real estate, subject however to the power of sale in his executors. The right of the testator to so provide in his will is not questioned. Indeed, it could not be for it has long been the settled law of this State that “ a general, unlimited and unrestricted power of sale of realty is not inconsistent with the devise to another of a vested interest in the same property ” (Matter of McLaughlin, 193 Misc. 192. To the same effect, see Crittenden v. Fairchild, 41 N. Y. 289; Kinmer v. Rogers, 42 N. Y. 531; Cussack v. Tweedy, 126 N. Y. 81, 87; Van Cott v. Van Cott, 167 App. Div. 694, 699, affd. 219 N. Y. 673; New York Central R. R. Co. v. First Nat. Bank, 232 N. Y. 330, 335; Hutkoff v. Winmar Realty Co., Inc., 211 App. Div. 726, 729; Mellen v. Mellen, 139 N. Y. 210, 219; Comrie v. Kleman, 162 App. Div. 510, affd. 222 N. Y. 558; Reed v. Under-hill, 12 Barb. 113, and Hetzell v. Easterly, 66 Barb. 443).
*477 Defendant claims that the power of sale has been extinguished or terminated by the long lapse of time between the probate of the will in 1907 and 1945, when the deed was given by the surviving executor of George Hatfield, deceased, to Howard D. Seld and wife. In addition to such long lapse of time, it is urged that many other facts indicate termination of the power of sale, citing (1) the various informal accountings; (2) the fact that the power of sale was not imperative; (3) the complete distribution of the personal estate prior to 1935; (4) the transfer of one-sixth interest in the estate by Phebe A. Woodard to Albert Hatfield, Jr.; (5) the death of Charles H. Hatfield and Ella M. Hatfield, conveying their respective interests under the will of George Hatfield by will to others, and (6) the fact that for many years nothing has been left for the executors to do but to manage and sell the real property which defendant claims was done as agent for the interested parties rather than as executors.
Careful consideration leads to a contrary conclusion. The power of sale was good and it remained good until it had been extinguished or terminated. No facts are set forth in the agreed statement which tend to show a termination of the powers of sale but quite to the contrary, it appears that the executors apparently in order to obtain the best price possible for the farm lands and possibly influenced by the fact of another nearby real estate development known as Bon-Air Estates, sold off lots from time to time during the period from 1907 to 1945. Twenty-six lots all told were sold during that period. The disposition of the real estate in such manner and the length of time so far consumed does not indicate, under the circumstances, termination of the power of sale. Informal accountings were frequently had with all of the interested parties. None of the interested parties have ever elected to take their interest in the real estate in the place of the proceeds to be derived from the sale thereof. While it is true that the power of sale may be terminated by the united action of the devisees under the will of George Hatfield, deceased, in electing to take the real property as real estate and to thereby terminate the power of sale, we have no such situation in the present instance (Van Cott v. Van Cott, supra, Mellen v. Mellen, supra). Neither the sale by Phebe A. Woodard of all her right, title and interest in and to the real and personal property of the estate of her father to Albert R. Hatfield, Jr., nor the deaths of Ella M. and Charles W. Hatfield who, in each instance, by will disposed of all their property, both real and personal to others, can be said to constitute an *478 election to take the real property received from their father’s estate as real estate and thus terminate the power of sale reposed in the executors. As a matter of fact, the releases executed by the devisees under the will of George Hatfield to the executors acknowledging receipt of their respective shares of the personal property and releasing the executors from any further liability as such, covering the period of their executor-ship up to March 1, 1945, is a clear recognition of power of sale in the executors throughout that period at least and no facts appear indicating the termination of such power by election or otherwise, since that time. There has never been a final accounting and the surviving executor has never been discharged. It would seem to follow that the surviving executor, not having been discharged and the power of sale not having-been terminated by an election or other act on the part of the devisees or their representatives at the time of the sale of said premises by the surviving executor to Howard D. Seld and his wife, had the power and right to convey the premises described in the complaint.
The defendant in support of his contention that the power of sale under the will had terminated and expired, calls attention to the statement in Mellen v. Mellen (139 N. Y. 210, 222, supra) wherein the court uses this language: “ A long lapse of time, during which a power of sale remained unexecuted, when there was no obstacle to its execution, might alone, or with other circumstances, affect the presumption of such an election.”
The election referred to' by the court was an election on the part of the devisees to receive the real property in kind, thus terminating the power of sale. As I have pointed out, the circumstances in this case are quite to the contrary.
The defendant also calls attention to the case of Matter of Schroder (176 Misc. 1024). We have a situation in that case that distinguishes it from the one before us in that in the case relied upon by the defendant, a final accounting had been had, whereas in the instant case no final accounting had been had. The Surrogate in the Schroder case (supra, p. 1030.) uses this significant language: “ The court is not to be understood to say that in no case wifi a discretionary power to sell real estate survive the complete payment of all creditors and the distribution of its personal assets in their entirety. All which is presently determined is that under the demonstration made by the entry of the decree of 1917, the fiduciaries, except in respect of the express trust which was settled in 1920, acted not as executors but as agents or trustees of an inter vivos *479 trust and that their acts in their entirety are not subject to the scrutiny or judicial action of this court.”
The question before us does not involve the matter of an accounting nor the termination of any particular trust. The sole question is whether or not under the general power of sale granted to the executors of the last will and testament of George Hatfield, deceased, the surviving executor could give a good and marketable title to Howard D. Seld and Margaret E. Seld, his wife, of the premises described in the executor’s deed.
There remains to consider the alleged violation of the building restriction set forth in the deed from the surviving executor to Howard D. Seld and his wife and from Seld and his wife to the plaintiff Weinstein. At the time of the conveyance of the premises in question from Seld and his wife to Weinstein, the premises consisted of a vacant lot. Subsequent to its purchase by Weinstein, he erected a dwelling house thereon with a garage attached thereto. It is claimed that such construction violated the restriction contained in the deed to Weinstein which provided as follows: “2. No building shall be erected on said premises other than one detached single family dwelling and a one or two car garage. All costing at least $5,000.” Other conveyances had contained similar building restrictions, some containing the additional clause: ‘ ‘ The design and location of all buildings shall conform to and be in harmony with existing modern dwellings and garages in the neighborhood.”
Not in any of the deeds containing such restrictions does the grantor or grantors agree that they will put the same or similar restrictions in other deeds to be given by them. Bearing in mind that other residences with garage attached had been erected' in the neighborhood where the house and attached garage were erected by Weinstein, and having in mind the ambiguity of the language used in the restriction, I find it difficult to conclude that the restriction was violated by Weinstein in having the garage attached to the house at the time of its erection. It would seem that the word “ detached ” as used in the restriction limits construction to single-family dwellings as distinguished from multiple or duplex type of dwellings.
I feel that the two questions presented to us for answer should be answered in the negative. The questions are:
1 ‘ 1. Had the power of sale given to the Executors of George Hatfield, deceased, expired or become invalid so that the title offered by the plaintiff to the defendant is unmarketable because *480 the same is derived through the executor’s deed given by Albert B. Hatfield, as sole surviving executor of the Will of G-eorge Hatfield, deceased, to Howard D. Seld and Margaret B. Seld, his wife, dated June 23, 1945 and recorded June 26, 1945, in the Oneida County Clerk’s Office in Book of Deeds No. 1072 at Page 413, there being no conveyances to the plaintiff, or his predecessor in title, from all of the devisees of said George Hatfield, deceased, or their distributees, devisees, representatives and assigns, except a quitclaim deed from said Albert B. Hatfield, Jr.?
“ 2. In view of the restrictions contained in the deeds hereinbefore set forth, running to Howard D. Seld and Margaret B. Seld, his wife, the plaintiff’s predecessor in title, and from said Howard D. Seld and Margaret B. Seld, his wife, to the plaintiff, is the title offered by the plaintiff to the defendant unmarketable because the plaintiff has built upon said premises contracted to be sold the building which is now standing thereon, which is a one-family dwelling house with attached garage? ” ■ It follows that the title offered to the defendant is marketable and that the plaintiff should have judgment against the defendant adjudging and decreeing that the defendant perform the agreement of June 21, 1949, and that the defendant accept a warranty deed of said premises from the plaintiff and pay to the plaintiff the balance of the purchase price upon delivery of such deed and assume the mortgage upon the premises held by the Savings Bank of Utica.
All concur. Present — Taylor, P. J., Love, Vaughan, Kim-ball and Piper, JJ.
Submitted controversy determined in favor of plaintiff, without costs, questions submitted answered in the negative, and judgment entered in accordance with the opinion.