12   113
127a 569

12   113
140a 377

12   113
79h 100

REED and VAN WART, executors of Nathaniel Fisher, deceased, appellants, *vs.* ALFRED UNDERHILL and others, respondents.

Where lands are not devised to executors to sell, but there is a mere naked power for that purpose, no estate vests in the executors; but the estate descends to the heirs at law, subject to the execution of the power.

Such an authority given to the executors to sell land, is valid only as a power in trust.

Although, according to the provisions of a will, the occurrence of a certain event would entitle them to the rents and profits, and thereby to the possession of the land; yet, if the event never occurs, their authority to sell still remains a mere power in trust.

If heirs, whose ancestor has authorized and empowered his executors to sell his land, and to divide the proceeds thereof amongst those heirs, should elect to take the estate in land, notwithstanding the power of sale in the will, their right to do so, even against the will of the executors, would be clear and indisputable.

And that which all the *cestuis que trust* might do, in respect to the whole of the trust property, one of them can do in respect to his undivided interest; so far, at least, as to transmit his share, by the usual and ordinary deed of conveyance, to another.

A deed from one of such *cestuis que trust*, for a valuable consideration, must be deemed an election, so far as he can elect, to take the estate unchanged; and will have the effect to transmit such interest and estate as he had in the premises, to the grantee.

By the terms of a will, a mere naked power and authority was given to the executor, to sell the real estate of the testator when the youngest child should come of age; and, after the payment of debts, and securing the dower of the widow, to divide the moneys arising from such sales amongst the testator's children. After the death of the testator, and before the time appointed for the sale, one of the children sold and conveyed, by a quit-claim deed, and for a valuable consideration paid to him therefor, all his interest, &c. (being one-fifth part) in the real estate, describing it by metes and bounds. *Held*, 1. That the authority to the executor being a mere naked power of sale, the land descended to the heirs of the testator subject to the execution of the power.

2. That the quit-claim deed was valid, and passed to the grantee all the interest of the heir who executed it, subject to the execution of the power.

3. That when the executor, afterwards, sold the estate, pursuant to the power, the grantee of the heir was entitled to the one-fifth part of the surplus moneys arising upon such sale; and that the decree of the surrogate, deciding that the grantor, and not the grantee, in the quit-claim deed, was entitled to the share of the surplus moneys, was erroneous, and should be reversed.

Reed v. Underhill.

THIS was an appeal by David Reed and Ann J. Van Wart, executor and executrix of the estate of Nathaniel Fisher, deceased, from that part of a decree of the surrogate of the county of Westchester, made the first day of October, 1850, in the matter of the final settlement of the accounts of Oliver Cornell, executor, &c. of Isaiah Underhill, deceased, which directed and ordered that the one-fifth of the proceeds arising from the sale of the premises directed to be sold by the will of said Underhill, should be paid to Alfred Underhill, one of his children and heirs at law. The will of Isaiah Underhill, made the 5th of November, 1829, gave the uses and profits of his farm of land in the town of Yorktown, in Westchester county, to his wife Patience, from the time of his decease until his youngest child should arrrive to the age of twenty-one years, for the purpose of enabling her to bring up his children, and giving them a suitable education, and to pay the interest of the money (if any) which should remain due from his estate after the sale of such part of his estate as was therein ordered to be sold by his executors, and the money arising from such sale should be applied by them to the payment of his said debts. And in case his wife failed to fulfill those duties, then the executors were empowered to let any part of the farm, except what his wife should be entitled to for her dower, and apply the avails to the aforesaid purposes, or any of them. The executors were also empowered to sell, within six months after his youngest child should arrive to the age of twenty-one years, all his farm of land, &c. at public sale, and to give sufficient deeds therefor ; and if his wife should release her dower, to put out at interest one-third part of the money arising from such sale, and to pay such interest yearly to his wife during her life. The principal to be divided between his children equally, and paid respectively to them or their heirs, within one year after the sale. And the other two-thirds of the moneys arising from such sales to be divided in like manner between his children, or their heirs, within one year after such sale by the executors. But if his wife should not agree to the sale of the real estate, and should refuse or neglect to release her dower to the purchaser, then the

whole of the moneys arising from such sales (except such part as might be necessary to pay just debts, if any should then remain due,) to be equally divided between them or their heirs respectively, and to be so paid within six months after such sales. The testator, at his death, (in the year 1829, soon after the making of his will,) left a widow and five children, one of whom was Alfred Underhill, the respondent. On the 26th of October, 1843, Alfred Underhill and Emeline his wife, for the consideration of $200 paid to them by Nathaniel Fisher, bargained, sold and quit-claimed to him, and to his heirs and assigns forever, all their and each of their right, title, interest, estate, claim and demand, both at law and in equity, and as well in possession as in expectancy of, in and to, all that certain farm, &c. describing it by metes and bounds, and which was the same that was devised as aforesaid by the will of Isaiah Underhill, deceased: the one-fifth thereof was thereby conveyed with all and singular the hereditaments and appurtenances thereunto belonging. After that conveyance, and about the 7th of March, 1850, Oliver Cornell, as the surviving executor of the will of Isaiah Underhill, sold and conveyed the farm and premises mentioned in the will, for $5,007,50. On the settlement of the accounts of Cornell, the surviving executor, before the surrogate of Westchester county, it appeared that after the payment of all the debts, &c. and after investing one-third part of the proceeds of the sale of the estate for the benefit of the widow of the testator, as directed in his will, there was a balance in the hands of the executor, after deducting his costs and expenses, of $2,969,72, belonging to the estate for distribution. Fisher, to whom Alfred Underhill and wife had sold his share of the farm held under his father's will, being dead, the appellants, his executor and executrix, claimed the one-fifth part of the moneys so remaining in the hands of Cornell, the surviving executor of Isaiah Underhill's will; but it was insisted on the part of the said Alfred Underhill, the respondent, that Fisher acquired no right to any part or portion of those moneys, or any interest in the lands or real estate of Isaiah Underhill, the testator, or any right, title or interest in the moneys arising from the sale thereof, by virtue

of the quit-claim deed from Alfred Underhill and wife, or other-wise. The surrogate decided that the share of the money and proceeds belonged to Alfred Underhill, (the respondent,) and not to Fisher, or to the appellants as his executors; and he made his decree accordingly. To that decision, so far as it related to the share of Alfred Underhill, the appellants excepted, and brought their appeal to the supreme court.

*S. F. Reynolds,* for the appellants.

*R. R. Voris,* for the respondent Underhill.

*By the Court,* BROWN, J. This was an appeal from a de-cree of the surrogate of the county of Westchester, made upon the final settlement, and for the distribution of the estate of Isaiah Underhill, deceased. Its decision turns, exclusively, upon the legal effect of the deed from the respondent, Alfred Underhill and Emeline his wife, to Nathaniel Fisher, deceased, the appellant's testator. Isaiah Underhill died seised of cer-tain lands, situate in Yorktown, in the county of Westchester, the one-fifth part of the proceeds of the sales of which is the subject in controversy. He left a last will and testament duly executed and published, and therein devised the uses and profits of the land to his wife Patience, from the time of his decease until his youngest child should arrive at the age of twenty-one years; for the purpose of enabling her to educate and bring up his children. And if she failed to bring up and educate the children in a suitable manner, then his executors were empow-ered to let out the lands and apply the avails thereof to the ed-ucation and maintenance of the children. And within six months after such youngest child should arrive at the age of twenty-one years, the executors were also empowered to sell the lands at public auction, and after making provision for the widow's dower therein, the proceeds were to be equally divided amongst his children, share and share alike. The will was duly proved, and letters testamentary thereon were issued to the ex-ecutor, Oliver Cornell, who is one of the respondents. The

lands have been sold in execution of the trust. Alfred Underhill, the respondent, is one of the children, and the appellants are made parties to the proceedings before the surrogate, and claim his share under the deed before referred to

The authority given to the executors to sell is valid only as a power in trust; for it is not pretended that the event ever occurred which entitled them to the rents and profits, and thereby to the possession. The lands are not devised to the executors, to sell, but there is a mere naked power for that purpose. No estate, therefore, vested in the executors, but the estate descended to the heirs at law, subject to the execution of the power. The existence of an authority to convert real estate into money, impressed it with the character of personal property; and courts of equity will, for many purposes, regard it as such, unless the parties in interest elect to take it as land and not as money. The law is settled that, if money is directed by a will, or other instrument, to be laid out in land, or land is directed to be turned into money, the party entitled to the beneficial interest may, in either case, if he elects so to do, prevent any conversion of the property from its present state, and hold it as it is." (2 *Story's Eq. Jur.* 111, 112, § 793. 1 *Roper on Leg.* 372. *Rashleigh* v. *Master*, 1 *Ves.* 201, *note a. Wheldale* v. *Partridge*, 8 *Ves.* 226. *Kirkman* v. *Miles*, 13 *Id.* 338.) Had all the children of Isaiah Underhill, deceased, elected to take the estate in lands, notwithstanding the power of sale in the will, their right to do so, even against the will of the executor, would have been clear and indisputable. And, that which all the *cestuis que trust* might do in respect to the whole of the trust property, one of them could do in respect to his undivided interest; so far, at least, as to transmit his share, by the usual and ordinary deed of conveyance to another. Alfred Underhill's deed to Nathaniel Fisher, (which is a deed of bargain and sale for the consideration of two hundred dollars, and in which his wife joined,) must be deemed an election, so far as he could elect, to take the estate unchanged; and must have the effect to transmit such interest and estate as he had in the premises, to the grantee.

Upon strict legal principles, however, the claim of the appellants to the subject in controversy has a sure foundation, upon which it may stand. "If a deed can not operate in the manner intended by the parties, the judges will endeavor to construe it in such a way that it shall operate in some other manner." In accordance with this rule it has been determined that a deed, intended to operate as a lease and release, or as a bargain and sale, but which could not take effect in that manner, was to be held good as a covenant to stand seised. So a conveyance, void as a lease and release, because the releasor had only a term for years, was held to operate as a grant and assignment. (*Cruise's Dig. tit.* 32, *Deed, ch.* 23, §§ 17, 18.) This is a familiar principle, and is thus recognized by Lord Mansfield, in *Goodtitle* v. *Bailey,* (*Cowp.* 600.) "The rules laid down in respect to the construction of deeds are founded in law, reason and common sense; that they shall operate according to the intention of the parties, if by law they may; and if they can not operate in one form, they shall operate in that which by law will effectuate the intention." Here is a guide we may safely follow. We are to ascertain from an examination of the instrument itself, the intention of the parties, and effectuate that intention, unless it conflicts with some rule of law. The deed was made and delivered on the 26th day of October, 1843, and the power of sale was executed in 1850. Until the time appointed by the will for the sale of the property, Alfred Underhill and the other children were not entitled to the possession, for the rents and profits were given either to the widow or to the executors. If, as he now claims, the deed operated only upon the lands, so long as they remained unsold, and did not attach upon the proceeds after the sale, it conveyed little or nothing, and the conveyance was an idle, unfruitful ceremony, or a fraud upon the grantee. The language of the deed is full and comprehensive, and forbids any such notion. It bargains and sells all the right, title, interest, estate, claim and demand in law and equity, as well in possession, as in expectancy, of the grantors, in the lands of which Isaiah Underhill died seised; and decribes them by metes and bounds. Now the estate and title which Alfred Underhill had

in the lands, was an estate in fee in the one-fifth part, subject to the widow's dower, and to the power of sale given to the executors by the will. And the interest, claim and demand which he had in and upon it, was the right to the one-fifth part of the proceeds, whenever the power was executed, and the estate converted into money. The language of the deed indicates the intention of the parties that this estate, title, interest, claim and demand, by whatever name it might be called, should pass to the grantee. The subject of the sale existed at the time, in the form of real estate; and I know of no more appropriate form of conveyance to a purchaser than that adopted by the parties, which was the ordinary deed of bargain and sale. "A deed comprehends and passes the incident as well as the principal, though the latter only be mentioned. The legal effect of the instrument is the same in respect to both. The form in which such an effect is produced—in the one case by express words, and in the other by implication—does not take from the conclusiveness of the effect." (*Pattison* v. *Hull*, 9 *Cowen*, 754. *Jackson* v. *Blodget*, 5 *Id.* 202.) "When any thing is granted all the means to attain it, and all the fruits and effects of it, are granted also, and shall pass, *inclusive*, together with the thing, by the grant of the thing itself, without the words *cum per tinentiis*." (*Sheppard's Touch.* 89, § 1.) The incidents necessary and appendant, will, in most cases, pass by the grant of the principal, without the word appurtenances. (*Cruise's Dig.* tit. 32, *Deed*, ch. 23, § 42.) Lands by descent or devise are held by the heir, or devisee, subject to a power of sale by the executors, or administrators, in the event of the personal estate being insufficient to day the debts of the ancestor. This power exists for the period of three years, after the granting of letters testamentary, or of administration; and attaches to, and follows the estate in the hands of a purchaser, as well as in the hands of the heir or devisee. (2 *R. S.* [100,] § 1. *Hyde* v. *Tanner*, 1 *Barb. S. C. R.* 75.) The mortgagor of an estate in fee, has the legal title and the right to the possession, subject to have the estate converted into money, under the power of sale contained in the mortgage; yet who could entertain any doubt,

that the grantee of an heir, or of a devisee, or of a mortgagor, would be entitled to the surplus proceeds of the estate, whenever it should be sold for the payment of the debts of the ancestor, under the provisions of the statute, or for the satisfaction of the mortgage debt, under the power of sale?

The present case is altogether too plain for doubt. The decree of the surrogate should be reversed; and the appellants are entitled to a decree for the one-fifth part of the real estate, being the share of Alfred Underhill therein, as ascertained by the surrogate, together with their costs to be paid by the respondent, Alfred Underhill.

[KINGS GENERAL TERM, October 6, 1851. *Morse, Barculo* and *Brown*, Justices.]