(32 App. Div. 442.)

MERRITT v. MERRITT et al.

(Supreme Court, Appellate Division, Second Department. July 23, 1898.)

1. CONVERSION BY WILL.
    Even though a power of sale in a will is not imperative in form, the general scheme of disposition may exhibit a clear design to convert the estate, and have it distributed as personalty.
2. ADMINISTRATOR WITH WILL ANNEXED—POWERS.
    Although an administrator with the will annexed does not succeed to powers which imply trust, confidence, and discretion, yet he will succeed to full power in administration as to other powers in the will, not yet administered upon, so far as they devolve upon his office as executor.
3. SAME—PAYMENT UNDER ORDER OF COURT.
    In a proceeding by an administrator with the will annexed, to require the personal representative of the deceased executor to account for and pay over property of the estate in his hands, the defendant cannot raise the question of the right and power of the administrator as against the beneficiaries of the estate, where the circumstances are such that he cannot in any event be required to pay up but once.
4. SAME—EMPLOYMENT OF EXECUTOR.
    If a testamentary scheme of distribution involves the keeping of numerous complicated accounts, extending over a considerable period, the facts may be such as to authorize the administrator to employ a bookkeeper.
5. TRUSTS—LIMITATIONS.
    As between the beneficiaries of an express trust and the trustee, who has never denied the character of the trust, or his relation thereto, or that moneys were due thereunder, the statute of limitations has no application.

Appeal from judgment on report of referee.

Action by George Merritt, administrator of Joshua Weeks, deceased, against John Merritt and others. From a judgment entered on the report of a referee, John Merritt appeals. Modified.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

De B. Wilmot, for appellant.
John R. Kuhn, for respondents.

HATCH, J.    This action is brought by the plaintiff, as administrator with the will annexed of the estate of Joshua Weeks, deceased, to recover moneys of the estate claimed to be in the hands of John Merritt, who is the executor and trustee under the last will and testament of Hannah B. Merritt, and also administrator with the will annexed of John J. Merritt, deceased.    The testator, Joshua Weeks, died in 1857; and by the terms of his will he constituted John J. Merritt and Mary H. Brown executors and trustees thereof.    The latter having died prior to the death of the testator, John J. Merritt became sole executor and trustee of the will, and continued to discharge his duties thereunder as such until about the 4th day of January, 1871, when he died, leaving a last will and testament, in and by which he constituted Hannah B. Merritt sole executrix, who duly qualified and entered upon the discharge of her duties.    Thereafter, and on August 28, 1873, letters of administration with the will annexed were issued to James Weeks, a son of Joshua Weeks, deceased, and to the plaintiff.    James Weeks did not become possessed of any of the personal estate of the testator, Joshua Weeks, nor did he act in and about the administration of the estate.    He died on January 18, 1883, leaving a last will and testament, by which Mary Ann Weeks became his sole executrix and legatee.    Hannah B. Merritt gave to the plaintiff, George Merritt, her eldest son, after her qualification as executrix, full power of attorney to act for her in and about the management of her estate; and, under the same, he took complete control of her property, and managed it until her death, on July 19, 1893, and also assumed, by virtue of such power, to take charge of the trust estate of Joshua Weeks, which seems to have been mingled by John J. Merritt with his own estate during his lifetime.    Hannah B. Merritt left a last will and testament, in which she appointed her two sons, the plaintiff and John Merritt, executors and trustees of her estate.    Her will was duly probated, and such executors and trustees entered upon the discharge of their duties. George Merritt, the plaintiff, continued to act until 1894, when he accounted and resigned as executor and trustee of her estate, and his letters as such were revoked.    The defendant John Merritt was appointed administrator with the will annexed of his father, John J. Merritt, deceased, on December 12, 1893; and, after the resignation of George Merritt, he became executor and trustee of the estate of Hannah B. Merritt, and in his several capacities took possession of, and assumed to control, the trust estate of Joshua Weeks, and to administer upon the same as had been previously done by the plaintiff in his capacity as trustee, and acting under the authority of the power of attorney given him by his mother, Hannah B. Merritt. John J. Merritt never filed an account of his administration of the estate of Joshua Weeks, and seems to have mingled such estate with his own, except as to a mortgage for $4,000, which he held as executor.    Some time after the appointment of the plaintiff with James Weeks as administrator with the will annexed of Joshua Weeks, he was cited to account in the surrogate's court.    He thereupon took proceedings to compel his mother to account, and in June, 1879, this suit was begun.

The purpose of the present action is to procure a construction of the last will and testament and codicil of Joshua Weeks, deceased, to have an accounting of his said estate by the persons who have assumed to administer the same, as executors and trustees or otherwise, to determine who are the persons entitled to take of the residue and remainder of such estate found to be due upon such accounting, and to direct the distribution of the same as may be just and proper; the object of the action being to embrace all matters and things connected with the estate of Joshua Weeks, to have the amount determined for which the said several parties shall account, and distribute to those entitled, to the end that a final disposition of said estate may be made as contemplated by the will and codicils of the testator. It is quite evident that the method of administration which was adopted by the original trustee and his subsequent representative, and the length of time which has elapsed, have very greatly complicated the condition of the estate and the accounts of the several executors and trustees, making the matter difficult and somewhat uncertain of arriving at an accurate conclusion. It becomes evident, however, that a duty is devolved upon the court to make such disposition of this controversy, in the interest of all parties concerned, as will be final, in order that a litigation of upward of 18 years may be composed, and that an estate which has been in process of distribution for over 40 years may finally find a resting place in the hands of the persons to whom it rightfully belongs. To this end, we have examined this record with care, and think that its facts warrant the disposition herein made of the matters in controversy.

Under the will of Joshua Weeks, after making disposition of his household furniture, and two small bequests, it is provided:

"Third. I give and bequeath to my now surviving grandchildren, and to Louisa, daughter of the late Nathaniel M. Brown, the one-fifth part of the remainder of my estate, to be equally divided among them on the demise of my son James and his present wife; the income or interest from this bequest to be payable to my said son James during his natural life, and after his demise to his widow, should his present wife survive him, during her natural life.

"Fourth. I give and bequeath to my surviving grandchildren, and to Louisa, daughter of the late Nathaniel M. Brown, one other fifth part of the remainder of my estate, to be equally divided among them on the demise of my daughter Hannah W. Sutton and her present husband; the income or interest from this bequest to be paid to my said daughter during her natural life, and, after her demise, to her husband, should she leave her present one surviving her, during his natural life.

"Fifth. I give and bequeath to my now surviving grandchildren, and to Louisa, daughter of the late Nathaniel M. Brown, the remainder of my estate, to be equally divided among them."

The sixth clause appoints the executors of the will, and revokes all former wills. The seventh clause, so far as important, reads:

"I hereby authorize my executor and executrix to let or lease my real estate, and collect the rents thereof; to sell the whole, or any portion thereof, either at public or private sale, for cash, or on such credit as they shall think best; to invest and reinvest, as often as they shall deem it to be expedient to do so, the proceeds of my estate, in such manner as they shall think proper and most likely to promote the interest and comfort of the families of my children."

53 N.Y.S.—9

The first codicil makes provision for a child subsequently born, and for children which may thereafter be born, and provides:

"Having requested John J. Merritt to give attention to the education and support of such of my grandchildren as may in his judgment require the same, to prevent misunderstanding, I hereby direct that the amounts expended by him, either from his funds or my own, for the purpose aforesaid, with the interest which may accrue thereon, shall be repaid to him or to my estate, as the case may be, out of the bequests made by me to the parties respectively for whom such expenditure shall have been made."

The further provisions of this codicil are not important to the questions presented.

The second codicil provides:

"First. I do hereby will and direct that, instead of paying the said several bequests to the parties now designated in said will to receive them, my said executor and trustee may, in his discretion, and according to his best judgment, apply the said several bequests, or either of them, to the support of and maintenance of such person or persons, or the family or families of such person or persons, or invest the same for their benefit during the lifetime of such person or persons; and after the decease of such person or persons, or either of them, the share or shares, or whatever remains thereof, of such person or persons so deceased, shall be equally divided among the heir or heirs of such person or persons, respectively, share and share alike; hereby revoking all clauses, parts, and portions of my said will and testament inconsistent or at variance with the provisions herein expressed, and particularly all that part of item 'Third' in said will relating to the present wife of my son James Weeks, as well as that portion of item 'Fourth' in said will relating to Henry Sutton.

"Second. After the demise of my son James Weeks, I give and bequeath unto Mary Ann Weeks, his wife, during her life, the income or interest from one-fifth of my estate; and item 'Fifth' in my said will is hereby modified to correspond with this provision."

We are of opinion that the construction of this will as a whole shows an intent upon the part of the testator to work an equitable conversion of his real estate into personalty, and that the same is to be construed as containing an imperative direction to the trustee to sell the real estate, and distribute the proceeds as provided in the bequests which were made. It is clear that the purpose of the testator was to dispose of his whole estate among the persons whom he has named as beneficaries under his will; and, to accomplish this purpose, it would seem a matter of necessity that the whole estate should be converted into money. While it is true that the power contained in the seventh clause of the will is not necessarily to be construed as containing an imperative direction to sell the real estate, and convert the same into money, and while the will in this respect does not work an equitable conversion of the real estate into personalty, yet such power is to be construed in connection with the several disposing clauses of the will, and with the language of the codicils and the power therein granted. The language of the disposing clauses of the will is in each instance in form a bequest of an interest, and not a devise of the estate. Thus, in the third clause it reads: "I give and bequeath * * * the one-fifth part of the remainder of my estate. * * * The income or interest from this bequest," etc. The language of the other clauses is the same. So, in the first codicil, in speaking of the disposition made by the

fourth clause of the will, and providing for the education of his grandchildren, he directs that the sums advanced shall be taken out of the "bequests" made to the parties respectively. This language is inappropriate for the disposition of real property, but it is directly applicable to a gift of personal property, and is apt expression for such purpose.

Coming now to the second codicil, its language works a radical change in the will, as we have seen from its quoted language, and seems to render the power which is thereby authorized to be exercised entirely inconsistent with any construction authorizing the descent of real property. The character of the property which is disposed of by this codicil seems to be personal, and payment over by the executor is to be in money; and, to accomplish this purpose, it, of necessity, works an equitable conversion of the real property of the estate. Under such circumstances, the case meets the decision in Delafield v. Barlow, 107 N. Y. 535, 14 N. E. 498. The executor therefore took the legal title to the estate for the purpose of working this conversion, and the descent from him was of personalty. Morse v. Morse, 85 N. Y. 53. This will, while peculiar, seems to have been intelligently drawn. The large powers which were vested in the trustee by the second codicil show an intent upon the part of the testator to vest the executor with discretion in matters quite difficult to specify in detail. In fact, detail did not serve to make plain the execution of the power contained therein. While there was this inherent difficulty to express clearly, yet the testator was careful to steer clear of any infringement against the statute of perpetuities, with which, if he extended his directions, he was quite likely to conflict. We therefore think that there existed a clear design to convert this estate, and distribute it as personalty. It is quite clear that, even though the powers which implied special trust, confidence, and discretion did not pass to an administrator with the will annexed who could not succeed to such power, yet such administrator would succeed to full power in administration as to the other powers under the will not yet administered upon so far as they devolved upon his office as executor. Greenland v. Waddell, 116 N. Y. 234, 22 N. E. 367.

So far as the further execution of the will of the testator, Joshua Weeks, was concerned, there was nothing which could not be done in its settlement and distribution upon the death of John J. Merritt which might not have been done by an administrator with the will annexed. It therefore follows that, while none of the estate vested in the legatees under the will upon the death of John J. Merritt, title did vest in the administrator with the will of such estate annexed; and, as the plaintiff was such administrator, it vested in him jointly with James Weeks. As the latter never acted except to discharge a mortgage, and as the defendant John Merritt subsequently succeeded to the administration of the estate of his mother and John J. Merritt, and received the corpus of the estate of Joshua Weeks, it is proper that he be compelled to account therefor in this action. This is also true for another reason. It is evident that the second codicil only operates upon an administrator with the will

annexed so far as the duties devolved are personal to the person named as a trustee for the execution of the power, as a limitation in extent of the power authorized. As to the remainder, or that part of the power which is not personal, the administrator succeeds to and administers in accordance with its terms. Upon the plaintiff, therefore, as such administrator, devolves the administration of such power; and, as he is willing and has assumed the same, no objection thereto arising in the mouth of the defendant John Merritt can be considered. The same result would follow were it assumed that the administrator with the will annexed succeeded to the execution of the whole power. He consents to such assumption of power,—indeed, necessarily assumes that of which the court may determine he is possessed; so that in no event can the defendant John Merritt be heard to urge the lack of power in this respect. It is in all respects presently sufficient to call for his accounting for all the funds and property of the estate in his hands or under his control. In any event, John Merritt is without interest in the question; for, whether the administrator with the will annexed takes the property, or the beneficiaries therein immediately take, he has no interest. Either or both are entitled to have him account, and he cannot complain of a decree which directs him to pay over, when he can be made to pay but once, when it appears that he has the property. While we reach the conclusion that the proper construction of this will is somewhat different from the construction adopted by the learned referee, yet in the disposition of the result of the questions of the extent to which the defendant Merritt shall account is worked no change. Both conclusions lead to the same result; and as John Merritt would be compelled to pay to the administrator with the will annexed, and he to the persons whom Merritt is directed to pay by virtue of the judgment, it can make no difference in the result that the judgment be permitted to stand as an account stated, and appellant be held to pay as therein directed. No one else appeals; and by this method the money is placed in the hands of the person entitled, and, appellant not being permitted to raise such question, no injustice can possibly be worked.

This leads us to a consideration of whether, in making up and adjusting the accounts, the referee has fallen into error for which any just complaint can be made by the appellant. The referee took, as a basis from which to adjust the accounts, the account filed by the appellant of the proceedings of John J. Merritt during his lifetime. We are unable to find therein any basis of error in taking that account as it appeared, or in failing to deduct therefrom what sum, if any, the plaintiff had taken from the Merritt estates. On the contrary, we see nothing in the evidence which leads us to conclude that the plaintiff took anything from the estate of John J. Merritt, as trustee of Joshua Weeks, which calls for any deduction of the amount which the plaintiff has charged against such estate as being in the hands of the appellant, and appearing in said account.

The appellant objects to being charged with the sum of $1,059.61, received by John J. Merritt from the Underhill estate, and the sum

of $1,363.75, received from the proceeds of the Croton Valley farm, on the ground that these funds were no part of the estate of Joshua Weeks. The facts concerning these sums are undisputed. They were no part of the estate of Joshua Weeks, but they were received by the appellant's testator for account of the Sutton children, for whom that testator was trustee under the will of Weeks. He commingled both the funds of the estate of Weeks and these funds of the Sutton children that he had received from other sources, and rendered an account of his liabilities to the beneficiaries, in which all these funds were stated. On this account he made payments generally. Not having specified as to what account his payments were made, it left it at the election of the beneficiaries to apply those payments to either debt from their trustee, as they might see fit. While, therefore, strictly speaking, as the learned referee clearly pointed out, the amount of these outside funds should not be charged to the appellant in this accounting, which is only of the estate of Weeks, it should be deducted from the payments made by the trustee, so as to leave only the excess of those payments over the amount of these funds to operate as the payment to the trust estate from Weeks. But, as the payment exceeded the amount of these trust funds, merely for the convenience of accounting it was just as well to adopt the course taken by the referee of charging the trustee with the amount of these outside funds, and then crediting him with all the payments made to the beneficiaries, of whatever character. That method of computation works no possible difference in the result, and, instead of being left to mere chance figuring, it reached a certain, definite result, upon a basis furnished by the appellant's testator, and entered as such in the account which he kept.

We are therefore unable to find any substantial basis of error in the result as reached, or in the method adopted by the referee in reaching such result, so far as the preceding accounts are concerned. We think, however, in view of all the testimony upon the subject, which is practically without dispute, that the referee erred in rejecting the whole of the claim presented by the defendant on account of the sums paid to Wemmel for keeping the books of the several estates. While it does not clearly appear that any of the funds of the estate of Joshua Weeks were used to pay any part of Wemmel's salary for keeping the books, yet it does appear that he was employed to perform work in respect thereto. Had there been a division of the account at the time when the service was rendered, and had the expense been fairly apportioned among the trusts upon which such service was rendered, the referee would doubtless have felt constrained to allow a fair amount for the service rendered upon the trust estate of Joshua Weeks, and thereby credited such amount to the defendant upon this accounting. In this respect both the plaintiff and the appellant are at fault, because they made no such separation; and finally, when called upon to account, and after this action was brought, they made up an arbitrary sum of $300 a year from the year 1871 to the year 1893, amounting to the sum of $6,600. It is quite apparent from the terms of the will of Joshua Weeks that the manner in which he required a distribution of his property

would involve the keeping of several accounts, more or less complicated, and extending over a considerable period of time before the estate could possibly be settled. It would be no more than fair, therefore, to permit the trustee to relieve himself of the more or less onerous labors imposed upon him in this respect; and the same is equally true of his successors in the administration of this estate. It is somewhat remarkable, considering the time that has elapsed since the original trust was created, and the various hands through which it has passed, that it should still be left in the main easily traceable; and this is due to the fact of the evident integrity with which the original trustee dealt with his cestui que trust, and no very serious breach of such trust appears to have been committed by his successors in interest. We are of opinion, therefore, that, although there was no separation of charge for the service rendered by the bookkeeper in connection with this trust estate, yet it is equally clear that such service was rendered. We are therefore of opinion that a fair sum should have been allowed for this item, but we do not think it should be allowed to a time as late as 1894. The account should have been made up as early as the 4th day of June, 1879, when this action was begun; and the necessity for the employment of a bookkeeper would then have ceased. Nor do we think that such service should be adjusted at the rate of $300 a year. On the contrary, we are of opinion that its fair value, in view of the proof, is not more than half of that sum. In this respect, therefore, the judgment should be modified by allowing to the defendant for nine years' services of a bookkeeper at the rate of $150 a year, amounting to the sum of $1,350, which should be deducted from the amount to be distributed, before distribution.

We find no other matter in this account or the basis of its computation, after a careful examination thereof, which calls in the slightest for our interference. On the contrary, we think the learned referee, with much painstaking care, has worked out a just result from a very complicated situation. While it may be possible that in some respects the adjustment might be made upon a different basis, yet the substantial result would not thereby be changed, and it is quite uncertain whether any other method than that adopted by the referee would harmonize so well with the justice of the case.

The appellant further contends that the statute of limitations is a bar to any recovery against the defendant. It does not appear that either John J. Merritt, as trustee of Joshua Weeks, or his successor in interest therein, has ever in any form repudiated his liability as a trustee to account to the cestui que trust under the will of Joshua Weeks. This was an express trust; and, as between the trustee and the cestui que trust, the statute of limitations has no application, and no length of time is a bar. 2 Perry, Trusts, § 863, and cases cited; Lammer v. Stoddard, 103 N. Y. 672, 9 N. E. 328; Gilmore v. Ham, 142 N. Y. 1, 36 N. E. 826. There may be circumstances where the relation of the trust is denied, and where lapse of time and attendant obscuring conditions will furnish the basis for refusing relief. It is not at all necessary that we attempt a statement of what the rule of limitation may be as applied to such

cases. It is sufficient to say of this case that there has never been even a denial of the character of the trust or the relation of the trustee, or but that moneys were due under the trust, in consequence of which the statute of limitations has no application to the case. There was no termination of the reference, and the present record does not contain all of the papers relating thereto. The point is consequently not available upon this appeal. Merritt v. Merritt, 18 App. Div. 315, 45 N. Y. Supp. 833.

It follows that the judgment should be modified by deducting from the sum found due from the defendant Merritt the sum of $1,350; and, as modified, the judgment is affirmed, without costs to either party in this court. All concur.