STEPHEN P. BETTINGER, as Trustee, Plaintiff, *v.* EDWIN W. MONT-
GOMERY and Others, Defendants.

Supreme Court, Erie County, May 1, 1925.

**Wills — construction — will giving life use of estate to certain beneficiaries
with remainder to testator's nephews creates vested remainder in said
parties, within meaning of Real Property Law, § 40, with power of sale
— clause giving executors power of sale does not operate to preclude
vesting of estate — one remainderman disposed of his interest in estate
to third party — power of sale not extinguished by conveyance of said
interest — plaintiff, designated administrator with will annexed, took
no power to sell and convey in representative capacity in absence of
imperative direction in will to sell — executors and administrators —
action by administrator for cancellation of instruments by which
remainderman disposed of interest as cloud on title — said conveyances
are valid — complaint dismissed — answer of remainderman, alleging
conveyances were obtained by fraud, dismissed for insufficiency of proof.**

A will which gives a life use of an estate to certain beneficiaries with the ultimate
remainder to testator's nephews, creates a vested remainder in said parties,
subject to no trust, within the meaning of section 40 of the Real Property Law,
with the right and power to sell and convey the interest as any other property,
since, upon the determination of all the intermediate estates said parties would
have immediate right to the possession of the property. Moreover, a further
clause in said will giving the executors a power of sale does not operate to
preclude the vesting of the estate in the remaindermen, since the effect of such
a power when exercised is to transfer the title in the realty to the proceeds.

Nor does a power of sale given in said will become extinguished by reason of the
fact that one of the remaindermen conveyed his interest to a third person, where
all beneficiaries interested in the execution of the power did not unite in its
extinguishment.

The plaintiff, substituted as administrator with the will annexed, after the death
of the administrator designated in the will and the failure of her designated
successor to qualify, takes no power to sell and convey in his representative
capacity as such administrator, where the authority to sell, given to the persons
designated in the will, is discretionary rather than imperative, since such a
power to sell did not pass to an administrator with the will annexed but was
limited to the particular donee of the power specified in the will.

Plaintiff's action, therefore, to set aside and cancel of record the deeds, agreements
and assignments made to the third person for valuable considerations on the
ground that they are a cloud upon the title to certain premises involved in the
estate, and if permitted to remain on record will prevent the plaintiff, as trustee,
from selling said premises at an advantageous price, should be dismissed, since
the plaintiff acquired no power of sale by his appointment, and the deeds, so
far as they convey the interest of the remainderman, who disposed of his rights,
are valid.

The answer of the defendant remainderman, who disposed of his interest to the
aforesaid third person, alleging fraud and misrepresentation in the conveyances
and asking judgments for the cancellation of the deeds and assignments, should
be dismissed, where there was a total failure to substantiate the claim by a fair

preponderance of evidence. Moreover, though claiming fraud, said remainder-man failed to effect a rescission of the transaction, retained and subsequently sold and conveyed the property deeded to him, and made no effort to redeem the property until his right under the circumstances was lost.

ACTION to set aside certain deeds, agreements and assignments involving construction of will.

*Willard Ticknor*, for the plaintiff.

*Philip A. Laing* and *Joseph Wechter*, for the defendants Edwin W. Montgomery and another.

*William Palmer*, for the defendant Buffalo Trust Company.

*Thomas Newton*, for the defendants Joseph Bettinger and another.

CHARLES B. WHEELER, Official Referee:

On or about January 14, 1912, Albert A. Bettinger died leaving a last will and testament, which was duly admitted to probate.

The will reads as follows:

" I, Albert A. Bettinger, of the City of Buffalo, County of Erie and State of New York, being of sound mind and memory, do hereby make, ordain, publish and declare this my last Will and Testament, in manner following, that is to say:

*"First.* I direct that all my just debts and funeral expenses be paid.

*"Second.* I give and bequeath to Canisius College of Buffalo, New York, the sum of five thousand ($5000.00) dollars, to be invested and the use and income thereof to be devoted to the education of one or more deserving poor children by said institution, the selection of said children to be educated to be left to the President or executive head of the said institution.

*"Third.* Of the five thousand ($5000.00) Dollars of the capital stock of the A. A. Bettinger Company which I own I give and bequeath to Millard Fillmore Roesser, the managing clerk in the office of the said A. A. Bettinger Company, the sum of four thousand ($4000.00) dollars par value of said stock, and to Simon J. Hatter one thousand ($1,000.00) dollars of said stock.

*"Fourth.* Of all the rest, residue and remainder of my estate, both real and personal, I give unto my sister, Bertha Bettinger Ribbel the use, during her natural life, and in case said Bertha Bettinger Ribbel shall die before my decease, or if my brother Stephen P. Bettinger shall survive her, then and in those events, or either of them, I give and bequeath the use of one-half of all the said rest, residue and remainder of my real and personal estate to the said Stephen P. Bettinger during his life time, and the use and income of the remaining one-half of said estate to be divided as follows:

· ·" To· Joseph M. Bettinger one-half thereof; and. to · Clifford Bettinger one-half thereof, they being the children of my brother Stephen P. Bettinger.

"*Fifth.* After the death of both my sister Bertha Bettinger Ribbel ·and my brother Stephen P. Bettinger I direct that my estate be distributed in the following manner:

" To Joseph M. Bettinger one-half thereof; and to Clifford Bettinger one-half thereof, and in case either of said last above mentioned residuary legatees shall die before my decease, then such portion as would otherwise have been inherited by them shall go to the survivors of them in the shares hereinbefore mentioned.

"*Lastly.* I appoint my sister Bertha Bettinger Ribbel as sole executor of this my last Will and Testament, hereby conferring upon her full power and authority to sell, convey, mortgage and invest the said estate, both real and personal, during her natural life, but to use only the income thereof as hereinbefore set forth, and in case of her death, either before or after her assuming said trust, I appoint as her successor John F. Nagel, of the City of Buffalo, New York, and hereby confer upon him, as such executor or administrator with the will annexed, full power and authority as hereinbefore conferred upon said Bertha Bettinger Ribbel as executrix.

"*In witness whereof* I have hereunto set my hand this 13th day of January, 1912.                         ALBERT A. BETTINGER."

On or about the 2d day of August, 1921, the defendant Joseph M. Bettinger and his wife, by an instrument in writing, assigned to the defendant Edwin W. Montgomery one-sixth of his interest as remainderman in the estate of his uncle Albert A. Bettinger and conveyed to him one-sixth of the premises described in the complaint, being certain premises owned and left by the testator.

On or about the 9th day of May, 1922, Joseph M. Bettinger and wife sold and assigned to said Montgomery one-thirtieth part of his said interest and conveyed to the said Edwin W. Montgomery one-thirtieth part of said real property.

On or about the 27th day of July, 1922, said Bettinger and wife conveyed to said Montgomery all their remaining interest in said estate and in said real estate. All three of these deeds were duly recorded in the clerk's office of Erie county.

Bertha B. Ribbel, the executrix named in said will, died on or about the 7th day of January, 1924.

By proceedings taken in the Surrogate's Court of Erie county the plaintiff Stephen P. Bettinger was appointed administrator and trustee with the will annexed of the said Albert A. Bettinger.

The complaint alleges that the deeds given by the said Joseph M. Bettinger and wife to the said Montgomery were wrongfully and unlawfully executed, without authority to do so, and are a cloud upon the title to the premises described, and if permitted to remain of record will prevent the plaintiff as trustee from selling said premises to advantage.

The plaintiff, therefore, demands a judgment setting aside and canceling said deeds, agreements and assignments, and directing the county clerk to cancel the same of record.

The defendants Joseph M. Bettinger and wife by answers allege that the first and second of the deeds given by them to Edwin W. Montgomery were not given or intended as absolute conveyances, but for the purpose of securing loans procured by them; that the third deed given by them to Montgomery was procured by fraud. They ask equitable relief setting them aside.

The first question presented for consideration is whether the deeds given by Joseph M. Bettinger may be set aside as a cloud on the title as alleged in the plaintiff's complaint. This we think turns largely on the nature and character of the estate given Joseph M. Bettinger under the will of Albert A. Bettinger. By the 4th clause of the will the use of the remainder of the testator's estate is given to his sister Bertha Bettinger Ribbel for her life. After her death the use of one-half of said estate is given his brother Stephen P. Bettinger for life and the use of the other half to the testator's nephews Joseph M. Bettinger and Clifford Bettinger so long as Stephen Bettinger shall live. On his death the testator directs his estate to " be distributed in manner following to Joseph M. Bettinger one half thereof, and to Clifford Bettinger one half thereof."

The will names Mrs. Ribbel as sole executor, and confers on her *"full power and authority to sell, convey, mortgage and invest said estate, both real and personal during her natural life."* In case of her death before or after her assuming the said trust the testator appoints John F. Nagel her successor with the will annexed, giving him *"full power and authority as hereinbefore conferred upon said Bertha Bettinger Ribbel as executrix."*

The plaintiff contends the will created a trust vesting in the executor sole power to dispose of the real property forming a part of the residuary estate, and that any conveyance by those beneficially interested operated to cast a cloud on the title, sought to be removed in this action. The referee does not so read the will. The will does not in terms convey to the executor said property which is usual when a trust is created.

It gives a life use to certain persons, and the ultimate remainder

to Joseph M. Bettinger and to his brother Clifford Bettinger. The will operated to give those parties a vested remainder in the property. The vesting was in no way contingent on the death of any of the life tenants. In other words, to enjoy the use of the real estate for life Mrs. Ribbel could lease and manage the property as devisee of a life estate under the will and not as executor. The same would be true of those taking the succeeding life estate.

An estate is vested when there is an immediate right of present enjoyment, or a present fixed right of future enjoyment. (40 Cyc. 1648; *Hopkins* v. *Hopkins*, 1 Hun,. 352.)

As was stated in *Moore* v. *Littel* (41 N. Y. 66): " If you can point to a man, woman or child who, if the life estate should now cease, would, *eo instanti et ipso facto*, have an immediate right of possession, then the remainder is vested." (See, also, *Dougherty* v. *Thompson*, 167 N. Y. 472.)

It was said in *Matter of Crane* (164 N. Y. 71): " Where from the examination of the whole will it is apparent that it was the intention of the testator that the estate should vest in the beneficiaries immediately upon his death, the rule governing where there is merely a direction to divide at a future time must be subordinated to that broader rule which requires that the intention of the testator shall control where it can be ascertained."

Where a contrary intention is not manifested in a will it is a settled rule of construction that if futurity is annexed to the substance of the gift, the vesting of title is suspended, but if the gift is absolute, and the time of enjoyment only is postponed the gift is not suspended, but the title vests at once. (*Fulton Trust Co.* v. *Phillips*, 218 N. Y. 573; *Embury* v. *Sheldon*, 68 id. 227; *Manice* v. *Manice*, 43 id. 303.)

Section 40 of the Real Property Law provides: "A future estate is either vested or contingent. It is vested, when there is a person in being, who would have an immediate right to the possession of the property, on the determination of all the intermediate or precedent estates."

Joseph M. Bettinger, therefore, had a vested estate in the real property left him by the will of his uncle, Albert A. Bettinger.

The existence in a will of a power of sale given executors does not operate to prevent vesting. The effect of such a power when exercised simply transfers the title in the realty to the proceeds. (*Matter of Brown*, 154 N. Y. 313; *Booth* v. *Baptist Church*, 126 id. 215; *Dana* v. *Murray*, 122 id. 604.)

We, therefore, reach the conclusion that the interest of the defendant Joseph M. Bettinger is a vested one, and that no trust was created by the will in question. If the interest is a vested one

and subject to no trust then it follows as matter of course that it is subject to alienation by the owner or owners; and that the defendant Joseph M. Bettinger had the right and power to sell and convey his interest like any other property. (*Bergmann* v. *Lord*, 194 N. Y. 70; *Rothschild* v. *Schiff*, 188 id. 327; *Baltes* v. *Union Trust Co.*, 180 id. 183; *Lovett* v. *Gillender*, 35 id. 617; *Hetzel* v. *Barber*, 69 id. 1, 12.)

By the 59th section of the Real Property Law, "An expectant estate is descendible, devisable and alienable, in the same manner as an estate in possession."

It also follows that the deeds sought to be canceled are valid so far at least as they operate to convey the interest of the remainderman Joseph M. Bettinger.

The question still remains whether the power of sale given in the will has been extinguished by the defendant Joseph M. Bettinger conveying away his interest. Such a power may be extinguished in certain cases where those beneficially interested elect to take the property itself in lieu of the proceeds in case of a sale. (*Trask* v. *Sturges*, 170 N. Y. 482, 497; *Mellen* v. *Mellen*, 139 id. 210; *Hetzel* v. *Barber*, 69 id. 1; *Prentice* v. *Janssen*, 79 id. 478.)

In this particular case it should be borne in mind that neither Mrs. Ribbel in her lifetime nor Mr. Stephen P. Bettinger, who took a life estate in one-half the property after Mrs. Ribbel's death, appear to have done anything to evidence an election on their part to take the real property in lieu of an interest in the fund to be realized from a sale in case one is had. The rule appears to be well established that to extinguish a power of sale all beneficially interested must concur. (Fowler Real Prop. Law [2d ed.], 390; *McDonald* v. *O'Hara*, 144 N. Y. 566; *Mellen* v. *Mellen*, 139 id. 210; *Greenland* v. *Waddell*, 116 id. 234; *Prentice* v. *Janssen*, 79 id. 478; *Trask* v. *Sturges*, 170 id. 482, 497; *Reed* v. *Underhill*, 12 Barb. 113; *Taber* v. *Willets*, 1 App. Div. 285.)

As neither of the life tenants, Mrs. Ribbel or Stephen P. Bettinger, have done anything showing their election to extinguish the power of sale, we reach the conclusion that the acts and conveyances of the remaindermen did not operate to destroy it.

It may well be that Mr. Stephen P. Bettinger might prefer to enjoy the income derived from the proceeds of a sale to that derived from rentals. To that extent, therefore, he is interested as a beneficiary in the power of sale, given by the will, and under the rule that all beneficially interested in the execution of such a power must unite in its extinguishment, the referee is of the opinion the power survives the transfers by the remaindermen.

However, a still further question remains which is whether such power may be exercised by the plaintiff Stephen P. Bettinger who

has been substituted as administrator with the will annexed of Albert A. Bettinger. The will first conferred the power of sale on Mrs. Ribbel. She died without exercising the power.

The will, however, provided that " in case of her death, either before or after her assuming said trust, I appoint as her successor John F. Nagel, of the city of Buffalo, N. Y., and hereby confer upon him, as such executor or administrator with the will annexed, full power and authority as hereinbefore conferred upon said Bertha Bettinger Ribbel as executrix." Mr. Nagel, however, has never qualified as administrator with the will annexed, but the plaintiff Stephen P. Bettinger has been appointed in his place. Can Stephen P. Bettinger exercise the power of sale, as successor, or could it have been exercised by either Mrs. Ribbel or John F. Nagel alone? A study of the clause conferring a power of sale shows that the authority given is purely discretionary and not imperative. The executor, or Nagel, if appointed administrator, might, if she or he saw fit, sell and convey. There is nothing obligatory on them to do so. There is a clear distinction between an imperative direction to sell and convey and one where discretionary power is conferred.

In cases where the authority is purely discretionary the rule is that a power to sell does not pass to an administrator with the will annexed, but is limited to the particular donee or donees of the power specified in the will. (*Greenland* v. *Waddell*, 116 N. Y. 234; *Merritt* v. *Merritt*, 32 App. Div. 442, 448; *Clifford* v. *Morrell*, 22 id. 470, 471.)

The rule is otherwise if the power to sell it is peremptory and imperative involving no discretion. (Fowler Real Prop. Law [2d ed.], 556.)

It follows, therefore, that Stephen P. Bettinger, who has been appointed administrator with the will annexed of Albert A. Bettinger, took no power to sell and convey in his representative capacity as such administrator. While the acts of the remainder-men did not extinguish the power during Mrs. Ribbel's lifetime, nevertheless the substituted ·executor or administrator did not succeed to or have the right to exercise the power given to her, or to Mr. Nagel had he qualified.

Such being the law, as the referee understands it, there being no trust created and the plaintiff acquiring no power of sale by his appointment the plaintiff's case wholly fails.

In this connection attention is called to the case of *Reed* v. *Underhill* (12 Barb. 113), where by the terms of a will executors were given a mere naked power to sell and divide the moneys arising from such sale among the testator's children. One of the children sold and conveyed all his interest in the real estate and it was held

that the authority of the executors being a mere naked power of sale, the land descended to the devisees subject to the execution of the power; that the deed was valid and passed to the grantee all the interest of the heir who executed it subject to the execution of the power.

Having, therefore, disposed of the plaintiff's right to the relief demanded in the complaint, there remains the question whether the defendant Joseph M. Bettinger is entitled to the relief demanded in his answer as against his codefendant Edwin W. Montgomery.

The answer of the defendant Joseph M. Bettinger alleges the first two of the deeds given by him to Montgomery were in fact given to secure loans made, and that the last was procured by fraud and misrepresentations, and, therefore, prays judgments setting aside and canceling said deeds and assignments, or that said deeds may be reformed upon said defendant Joseph M. Bettinger refunding the consideration paid by Montgomery and such sum in cash as shall represent the value of the Franklin street property transferred by Montgomery to him as part consideration of the third and final deed and transfer to Montgomery.

We have carefully considered the evidence offered to sustain the contention of the defendant Joseph M. Bettinger and after such consideration are forced to the conclusion that the preponderance of the evidence is decidedly against the claim, and a case for the relief asked has not been made.

The referee cannot in the compass of an opinion state all the reasons which lead him to this conclusion. He can only briefly refer to certain of the salient facts. Mr. Bettinger was engaged in the coal business and in need of money to finance it. His attention had been called to some advertisement of the defendant Montgomery that he purchased inheritances. He visited him with a view of in some way, at least, realizing on his interest in the Albert A. Bettinger estate. Joseph M. Bettinger admitted on the stand that in doing so he went to Montgomery as a stranger; that he had no reason for regarding him as a friend, no reason for confiding in him, and expected him to look out for himself. In other words, no relation of trust or confidence existed between them. While Mr. Bettinger as to the first and second transactions between himself and Montgomery claims the advances made were in the nature of loans, Mr. Montgomery denies any such agreement was talked of or made. The papers to carry out their agreements were drawn by Judge Burd, who acted as attorney for Montgomery, but the instructions as to their drafting were given Judge Burd when both Montgomery and Bettinger were present, and Judge Burd

testifies he drafted the papers in strict accordance with those instructions, embodying in them the agreement as stated to him. Judge Burd's professional standing is such that his statement cannot be questioned. The assignment on the first transaction contained the following clause: " This assignment to be an absolute assignment of the interest above mentioned, and not in any way as a loan or as an advance, nor is the same assigned as collateral security for any such loan or advance."

The agreement entered into at the time of the first transaction also contained the following clause: "*Fourth*. It is further understood and agreed that this sale is absolute and complete and that the interests hereby sold which are to be confirmed by deeds and other assignments are sold without reservation of any kind or nature, and are not to be transferred or assigned or deeded as collateral or as a loan or advance."

Judge Burd testified that these papers were read to Mr. Bettinger before their execution, and a copy of the agreement was given to him, and he has had possession of it since August, 1921.

No language could be plainer or more explicit, and is incapable of being misunderstood by any one of ordinary intelligence.

When the second transaction was had substantially the same proceedings were had. Judge Burd again drew the papers to carry out the agreement of the parties under their instructions. Before their execution, however, Mr. Bettinger took copies of the drafts away for the purpose of consulting his attorney, and after bringing them back had a modification made in them as to the amount of the interest to be sold and transferred. These papers on the second transaction contained substantially the same clauses as the first, and was in the following words: " This assignment is an absolute assignment of the interests above mentioned and shall in no wise be regarded as a pledge or security for any loan or advance made by the said Edwin W. Montgomery to the undersigned, but such assignment is made as the result of an absolute purchase."

Again, Mr. Bettinger was furnished a copy of this agreement.

Judge Burd further testified that at none of the conferences, or at the time of the execution of the papers, was there a suggestion by any one that the transfers or assignments made were for the purpose of securing loans or advancements. In view of this evidence it is impossible for the referee to find that the transactions between the parties were intended other than just what the written agreements and papers purport.

In August, 1922, Mr. Bettinger was in further need of money in his business and wrote Judge Burd a letter saying: " I find that to consider going into the coal business, I will require considerably

more capital; and you advised me not to consider a partner, which means look to other resource for finance. If you know of anybody who would be willing to take over the balance of my inheritance, I believe I would sell out."

The fair inference to be drawn from the letter is that he then recognized he had by the former deals sold a portion of his inheritance and was looking for a buyer for the remainder. Judge Burd having no one in mind likely to buy, referred him to Mr. Montgomery, and a sale to him was agreed on and the necessary papers drawn by Judge Burd and executed. This is conceded to have been an out-and-out sale. The complaint so alleges. It is, however, attacked on the allegation that it was induced by fraud and misrepresentation. The consideration for this final transfer was the conveyance to Mr. Bettinger of a piece of property on Franklin street and the payment to him of $500 in cash and the two $1,000 bonds of the Lackawanna Steel Company. It is claimed that Mr. Montgomery misrepresented the value of this property, and placed a value thereon in excess of its real worth, and that Montgomery further stated in substance that he had a purchaser who would buy it at any time Mr. Bettinger wished to sell at $15,000; that the property had no such value and Mr. Montgomery had no such purchaser. Mr. Montgomery in his evidence stated he told Mr. Bettinger he considered the property worth $17,500, but denied he represented he had a purchaser for it at $15,000. On account of a rise in land values in the city, there was some activity in real estate in that neighborhood and prices were advancing, and Mr. Montgomery advised Mr. Bettinger to hold on to the property for a further advance. Mr. Montgomery called as a witness Mr. Breadon, a real estate dealer, who testified to selling property in that block in 1921 or 1922 for $655 per front foot, and he placed a value on the property in question at from $600 to $700 per front foot. This lot had a frontage of twenty-six feet. At $600 per front foot the value would have been $15,600; at $700 per foot $18,200. Doubtless the going prices were largely speculative, but the estimate of value admittedly stated by Mr. Montgomery cannot be said to have been far out of the way on the basis stated. The referee, however, is impressed that what was, or may have been, said as to value must be taken largely as a matter of the expression of an opinion on the seller's part, and understood by the purchaser as such, which never can be made the basis of fraudulent representation. Certainly there is no evidence in the case showing Mr. Bettinger was prevented from inquiry or otherwise ascertaining what the value of the property actually was. He had ample means of informing himself on that subject. In *Farnsworth* v. *Duffner*

(142 U. S. 43, 48) the court held a party is not justified in relying on false representations made to him:

" 1. When, before entering into the contract or other transaction, he actually resorts to the proper means of ascertaining the truth and verifying the statement.   2. When, having the opportunity of making such examination, he is charged with the knowledge which he necessarily would have obtained if he had prosecuted it with diligence.   3. When the representation is concerning generalities equally within the knowledge or the means of acquiring knowledge possessed by both parties."   (See, also, the cases of *King* v. *Lamborn,* 186 Fed. 21, 28; *Farrar* v. *Churchill,* 135 U. S. 609, 615, 616; *Clark* v. *Reeder,* 158 id. 505, 523; *Shappirio* v. *Goldberg,* 192 id. 232, 241.)

It was natural for one selling property as Mr. Montgomery was, to place full value, it may be puff values a bit, but at most it would require a very strong and convincing case to justify a court in upsetting deals on the expression of. opinion of values of property sold.   We do not think the evidence in this case justifies our so doing.

In any event the testimony of Mr. Bettinger has been so discredited in other particulars that the referee would not be justified in accepting it in this matter over the denials of the defendant Montgomery.   We prefer to think Mr. Bettinger's recollection is incorrect as it appears to have been in other particulars than to think he has purposely misrepresented the facts.

It is incumbent on the plaintiff to make out his case by a fair preponderance of the evidence, which in our opinion he has failed to do.

There is another circumstance which needs consideration.

It appears that after acquiring the Franklin street property Mr. Bettinger sold and conveyed it away in 1923 for $9,000.   He probably sacrificed it as he did his interest in the estate for ready money.   Be that as it may, if he had been in any way defrauded, as he claims, at that time he must have known the fact.   Yet he retained and subsequently sold and conveyed away the property deeded to him so that the *statu quo* could not be restored.

The law is well settled that where a party has been defrauded he has two remedies.   He may rescind the contract or transaction on account of the fraud, or he may affirm and sue for damages. (*Pryor* v. *Foster,* 130 N. Y. 171; *Gould* v. *Cayuga Co. Nat. Bank,* 99 id. 333; *Miller* v. *Barber,* 66 id. 558.)   If he elects to rescind he must do so immediately on discovering the fraud.   (*Pryor* v. *Foster,* 130 N. Y. 171; *Strong* v. *Strong,* 102 id. 69; *Schiffer* v. *Dietz,* 83 id. 300.)

Mr. Bettinger did not rescind. With knowledge of the facts he retained the consideration received, and deeded away the real property he had received. He made no offer to redeem the property. It was only after Mrs. Ribbel's death did he seek to rescind. We think under the circumstances his right to rescind was lost. If he has any cause of action for fraud his remedy is one for damages. In such a case the damages sustained would be the difference between the value of the Franklin street property as represented and what it was actually worth, and not to set aside his conveyance to Montgomery as here asked. We are of the opinion this cannot be done.

However, we are of the opinion that a case of fraudulent representations has not been made. Mr. Bettinger made a very bad bargain. He evidently was in need of money. He did not know when he would come into possession of the property left him by his uncle's will. It might have been years. He himself might die prior to the death of the life tenants. The future was uncertain. As has been said, " it was a gamble." Under these conditions he made the deals he did, which as matters turned out were unfortunate for him and ill advised. Nevertheless the court cannot make a new bargain, or correct his errors of judgment. We are unable to reach any other conclusion than that the plaintiff's complaint, and the alleged cause of action set up in the answers of the defendant Joseph M. Bettinger should be dismissed, but without costs.