GUSTAVUS D. S. TRASK et al., as Executors of BENJAMIN I. H. TRASK, Deceased, Respondents, *v.* SADIE TRASK STURGES, Individually and as Executrix of BENJAMIN I. H. TRASK, Deceased, et al., Appellants.

1. WILL — RESIDUARY CLAUSE — POWER OF SALE. A specific piece of realty required by a will to be sold at public auction to enable the executors to provide a fund to supply the necessities and desires of the testator's widow and to pay a legacy, falls, on the death of the widow without its being sold because unnecessary for the purpose for which the provision was made, into the residue with other unsold property under a subsequent clause of the will directing the sale and conversion, after the widow's death, of all the remaining estate into cash at the discretion of the executors for specified purposes, so as to be controlled as to the manner of sale and disposition of the proceeds by the provisions of the latter clause instead of the former.

2. WHEN GIFT WILL NOT BE REDUCED TO A LIFE ESTATE. A gift of property by a clause of a will declaring that one-half of a fund to be

created by the sale and conversion of the remainder of the testator's estate into cash shall be the property of his two granddaughters will not be cut down by a provision that the principal is not to be withdrawn by them, which might be construed as a suggestion intended to apply merely during the accumulation of the fund by the conversion of the property, or by general language in the will indicating an intention to create a trust for them, where the will was not prepared by a lawyer or one familiar with the technical terms usually employed in such instruments or with the requisites of a valid trust, and the scrivener had no accurate knowledge as to the meaning of the words "trust," "trustee," or "trust fund," and the placing of the control of a large estate in an unknown trust company, to be selected by the executors, on the payment of interest merely without the imposition on it of any of the ordinary duties of a trustee, is not consistent with the testator's character as a business man of large experience; nor are the words importing such gift modified by a provision immediately following to the effect that the legatees shall have the power to devise and bequeath such property, and in default thereof it shall go to their heirs, since, although unnecessary if an absolute gift was intended, it is not actually inconsistent therewith, and cannot, in view of the fact that the expression was used by one not learned in the law, be construed to cut down the gift; the legal title to the property, therefore, vests absolutely in the granddaughters, subject only to the power of sale conferred upon the executors.

3. Power of Sale — Extinguishment. The power of sale given executors under a will directing that land be sold and the proceeds distributed is extinguished by an election to take the land and notification of such election to the executors by the parties beneficially interested, before the conversion has actually taken place, where the gift is absolute and the beneficiaries are competent and of full age, and, therefore, the executors cannot lawfully thereafter proceed to execute it.

*Trask* v. *Sturges*, 56 App. Div. 625, reversed.

(Argued February 24, 1902; decided April 8, 1902.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 31, 1900, except so far as it affirms so much of the former judgment as adjudged that the complaint herein be dismissed; that the first counterclaims in each of the amended answers be dismissed and that no costs be allowed to the defendants against the plaintiffs, affirming a judgment of Special Term construing the will of Benjamin I. H. Trask, deceased.

The facts, so far as material, are stated in the opinion.

*William B. Hornblower* and *William R. Wilder* for appellants. The provision for a sale of certain of the real property at public sale provided for in the 3d paragraph of the will does not survive the death of the widow of the deceased. (*Fisher* v. *Banta*, 66 N. Y. 476; *Sweeney* v. *Warren*, 127 N. Y. 426.) The 6th paragraph of the will creates no valid trust; but the legal title to all of the testator's property has vested, one-half in his daughter, Mrs. Sturges, and the other half in his two granddaughters in fee simple. This title is subject to the power of sale vested in the so-called trustees, and the real property may thus be regarded as equitably converted into personalty. The persons, however, for whose benefit this power is to be exercised, being of full age, can waive its exercise, and can elect to take the property as it stands, and they have so elected. (*Cooke* v. *Platt*, 98 N. Y. 35; *Holly* v. *Hirsch*, 135 N. Y. 594; *Underwood* v. *Curtis*, 127 N. Y. 537; *Matter of Brown*, 154 N. Y. 324; *Mills* v. *Husson*, 140 N. Y. 104; *Morice* v. *Bishop*, 10 Ves. 535; Schouler on Wills, § 595; *Campbell* v. *Beaumont*, 91 N. Y. 464; *Van Horne* v. *Campbell*, 100 N. Y. 287; *Lawton* v. *Corlies*, 127 N. Y. 100.; *Woodward* v. *James*, 115 N. Y. 346.) Assuming that the testator intended to give only a life interest in this fund to the granddaughters, with remainder to their legatees or next of kin, there being no valid trust, the legal effect of the provisions of the 6th paragraph is to vest absolute title to their one-half of the residuary estate in the granddaughters. (*Cutting* v. *Cutting*, 86 N. Y. 522; *Hume* v. *Randall*, 141 N. Y. 499; *Deegan* v. *Wade*, 144 N. Y. 573.) The power of sale conferred by the will is for the benefit of the three residuary legatees, and they being the only parties beneficially interested have a right to waive the execution of the power. (*Mellen* v. *Mellen*, 139 N. Y 210; *Prentice* v. *Jansen*, 79 N. Y. 479.) If the 6th paragraph of the will be construed to create a trust, such trust would be invalid as suspending the absolute ownership of property for a period not limited by lives. Intestacy would result, and the defendant Sarah S. S.

Sturges would take the entire residuary estate as the sole next of kin. (*Underwood* v. *Curtis,* 127 N. Y. 523; *Roberts* v. *Corning,* 89 N. Y. 225; *Schettler* v. *Smith,* 41 N. Y. 328; *Garvey* v. *McDevitt,* 72 N. Y. 556; *Manice* v. *Manice,* 43 N. Y. 303; *Hope* v. *Brewer,* 136 N. Y. 126; *Stewart* v. *Hamilton,* 37 Hun, 19; *Deegan* v. *Wade,* 144 N. Y. 573; *Smith* v. *Edwards,* 88 N. Y. 92.)

*Charles Howland Russell* for respondents. By the terms of the 3d and 6th articles of the will there was effected an equitable conversion into personalty of all the real estate of which the testator died seized. (*Power* v. *Cassidy,* 79 N. Y. 602; *Underwood* v. *Curtis,* 127 N. Y. 523; *White* v. *Howard,* 46 N. Y. 144; *Delafield* v. *Barlow,* 107 N. Y. 535; *Doane* v. *M. T. Co.,* 160 N. Y. 494; *Fraser* v. *Trustees,* 124 N. Y. 479; *Salisbury* v. *Slade,* 160 N. Y. 278; *Shipman* v. *Rollins,* 98 N. Y. 311; *Morse* v. *Morse,* 85 N. Y. 59; *Asche* v. *Asche,* 113 N. Y. 232; *Fisher* v. *Banta,* 66 N. Y. 468.) Valid express trusts were created by the 6th article of the will. (Schouler on Wills, §§ 466, 468; Roper on Legacies [2d Am. ed.], 1460; *Byrnes* v. *Stilwell,* 103 N. Y. 453; *Roe* v. *Vingut,* 117 N. Y. 204; *Hopkins* v. *Rent,* 145 N. Y. 363; *Meeks* v. *Meeks,* 161 N. Y. 66; *Pond* v. *Bergh,* 10 Paige, 140; *Phillips* v. *Davies,* 92 N. Y. 199; *Allen* v. *Allen,* 119 N. Y. 280; *Crooke* v. *County of Kings,* 97 N. Y. 421; *Holland* v. *Alcock,* 108 N. Y. 312; *Morse* v. *Morse,* 85 N. Y. 53.) The interests created by the 6th article of the will became vested immediately upon the death of the testator's widow. (*Cochrane* v. *Schell,* 140 N. Y. 516; *Steinhardt* v. *Cunningham,* 130 N. Y. 292; *T. G. T. Co.* v. *C., B. & Q. R. R. Co.,* 123 N. Y. 37; *Dougherty* v. *Thompson,* 167 N. Y. 472; *Bowditch* v. *Ayrault,* 138 N. Y. 222; *Stokes* v. *Weston,* 142 N. Y. 433; *Manice* v. *Manice,* 43 N. Y. 303; *Matter of Embree,* 9 App. Div. 602; *Canfield* v. *Fallon,* 43 App. Div. 561; *Matter of Crane,* 164 N. Y. 71.) No unlawful suspension of the power of alienation of real estate or of the absolute ownership of personal property has been attempted or effected by the will or

by the 6th article thereof. (*Manice* v. *Manice*, 43 N. Y. 303; *Hope* v. *Brewer*, 136 N. Y. 126; *Deegan* v. *Wade*, 144 N. Y. 573; *Robert* v. *Corning*, 89 N. Y. 225; *Henderson* v. *Henderson*, 113 N. Y. 12; *Schermerhorn* v. *Cotting*, 131 N. Y. 58.) The granddaughters are not, as they claim, the owners of particular estates for life, each in an undivided one-fourth part of all the real estate, nor have they an absolute power of disposition thereof. (*Cutting* v. *Cutting*, 86 N. Y. 522; *Hutton* v. *Benkard*, 92 N. Y. 295; *Sweeney* v. *Warren*, 127 N. Y. 426; *Mills* v. *Husson*, 140 N. Y. 99; *Graff* v. *Bonnett*, 31 N. Y. 9; *Cochrane* v. *Schell*, 140 N. Y. 516; *Cook* v. *Lowry*, 95 N. Y. 103; *Matter of Moehring*, 154 N. Y. 423; *Matter of Brown*, 154 N. Y. 313; *Knox* v. *Jones*, 47 N. Y. 389.) The daughter and granddaughters have not the power to elect to take the real estate freed from the power of sale. (*Hetzel* v. *Barber*, 69 N. Y. 1; *McDonald* v. *O'Hara*, 144 N. Y. 566; *Prentice* v. *Janssen*, 79 N. Y. 479; *Mellen* v. *Mellen*, 139 N. Y. 210.)

MARTIN, J. The original purpose of this action was to compel the defendant Sadie Trask Sturges, one of the executors of the last will and testament of Benjamin I. H. Trask, to unite with the plaintiffs, her co-executors, in selling certain real estate mentioned and described in the third clause of the testator's will. The defendants appeared and answered, admitting some and denying other allegations of the complaint, and then set up two counterclaims; one, to procure the removal of the plaintiffs as executors, and the other, to obtain a judicial construction of the testator's will.

Upon the trial the relief demanded by the plaintiffs was denied and their complaint dismissed upon the ground that the defendant Sadie Trask Sturges ought not at that time to be compelled to join in the sale of the real estate described, as it would be against the best interests of the estate. The court likewise decided that the first counterclaim of the defendants should be dismissed, as there was no such misconduct on the part of the plaintiffs as would justify their removal. It

also construed the testator's will, which, in substance, is as follows:

After he declared the instrument executed by him to be his last will and testament, the testator designated three persons whom he denominated "trustees" to carry it into effect. He then directed: 1. That they first pay out of his personal estate all expenses pertaining to his last illness and funeral expenses; 2. That they pay his wife, during life, out of the personal estate of which he might die possessed, or which might accrue from interest, rents, profits, sales or any other source, such sums at such periods as she might need or desire for her own use; 3. That they should as soon after his death as might in their judgment seem fitting, dispose of his Fifth avenue property at public sale, and deposit the cash proceeds with the Manhattan Bank Company to their joint credit to be used as thereafter and theretofore provided; 4. That they pay his brother seventy-five thousand dollars out of the proceeds of the sale of the Fifth avenue real estate, or any other moneys on hand, such payment to be made as soon as his trustees should determine the condition of the trust fund would permit; 5. That they pay Antonio Casello one thousand dollars. Then follows the sixth paragraph: "Sixth. After the death of my beloved wife, Harriet N. Trask, I hereby direct that my said trustees shall in their discretion within a period of five years after her death, sell and convert all my remaining estate, real, personal and mixed, into cash, and shall deposit one-half of the net proceeds of the same in a Trust Company, to be by them selected, at the best rate of interest obtainable, to be held as a trust fund by said Trust Company, the principal sum not to be withdrawn by either of the beneficiaries of this trust. The fund is to be the property of my two granddaughters, Sadie Trask Sturges and Adele Sturges, in equal proportions, who may by will devise and bequeath the same, or, failing to make will, it shall go to their heirs-at-law. Said Trust Company shall pay the interest on this trust fund so deposited quarterly in equal proportions to my said granddaughters, Sadie Trask Sturges and Adele Sturges.

The other half of my estate so converted as specified in this article shall be paid to my daughter Sarah S. S. Sturges, for her own separate use and benefit." By the seventh and last clause he directed that his said trustees should not be required to give bonds, and in case either or both trustees designated die or fail to act. during the existence of the trust, the surrogate of New York should designate a trustee or trustees to fill the vacancy and carry out his will in the spirit in which it was made.

The trial court in effect held that the will was valid as a will of real and personal property ; that the provisions contained in the third paragraph directing a sale of the real property therein mentioned worked an equitable conversion of it into personal property from and after the death of the testator ; that such directions constituted a peremptory power of sale which was required to be made at public auction, and that the interests of Sarah S. S. Sturges in that property were subject to the power contained therein. It was also held that the directions contained in the sixth paragraph in respect to the remaining real estate worked an equitable conversion of it into personal property from and after the death of the testator's widow ; that they constituted a peremptory power of sale, and that the interests of said defendant Sarah S. S. Sturges in such real estate were subject in all respects to such power of sale. It was likewise held that two valid express trusts were created by the sixth paragraph, one for the benefit of each of the two grandchildren named, and that said trusts vested in interest immediately upon the death of the widow ; that the executors had authority to nominate a trust company to execute such trusts, and that when selected and it has accepted the trust, it would be clothed with all the powers . of a trustee of an active express trust in respect thereto, and that the selection of such . trust company might be made at any time and need not be deferred until the real and personal estate shall be converted into cash. It further held that the defendants Sarah T. Sturges and Adele S. Dodd had no absolute power of disposition in respect to any of the real estate of which the testator died seized, and that none of the defend-

ants possessed a right to elect to take the real property of the testator, or any part thereof freed from such powers of sale.

The question first presented is whether the provisions for the sale of the Fifth avenue property contained in the third paragraph of the testator's will survived the death of his widow. It is obvious and seems to be practically admitted that her death effected a material change in the testator's estate and as to the operation and effect of the will, and that thereupon the property belonging to the estate was to be controlled and disposed of under the provisions of the sixth paragraph, except as to the manner in which the Fifth avenue property should be sold. The appellants, however, contend that after her death the manner in which the property was to be sold, as well· as the disposition of its proceeds, was controlled by the sixth provision and not by the third. By the sixth paragraph the testator directed his executors, in their discretion, within the period of five years after the death of his widow, to sell and convert all his remaining estate, real, personal and mixed, into cash, and then directed what disposition should be made of the net proceeds. We are of the opinion that the provision in the sixth clause, requiring the sale and conversion of " all my remaining estate, real, personal and mixed," was intended to include such of the Fifth avenue property as was unsold, and, upon the death of the widow, that the provisions in the third clause for its sale were superseded by the provisions in the sixth. It is quite obvious that the purpose of the sale provided for by the third ·paragraph was to enable the executors to provide a fund from which to supply the necessities or desires of the widow and to pay the legacy given to the testator's brother. That such was its purpose seems to be practically admitted in the complaint, and that the personal property proved sufficient for both purposes, and that both had been accomplished, is also alleged therein. Therefore, a sale for that purpose became unnecessary, and, consequently, the power was extinguished. (*Sweeney* v. *Warren*, 127 N. Y. 426, 431.) In every case ·where such a power of sale exists there is an implication that

when the purpose for which the conversion was directed has failed or been accomplished, the power should not be exercised. Where a conversion takes place, it is because the purpose of the will requires it. (*Fisher* v. *Banta*, 66 N. Y. 468, 476.) We think that, upon the death of the widow, without a sale of the property mentioned in the third paragraph, there being no necessity therefor, it fell into the residue with the other unsold property of the testator, and if now sold by the executors it must be under the provisions of the sixth paragraph, and, hence, the Fifth avenue property is not required to be sold at auction.

The appellants also contend: 1. That no valid trust is created by the sixth paragraph, but that the legal title to the testator's property vested absolutely, one-half in his daughter and one-fourth in each of his two grandchildren. 2. That this title is subject to the power of sale vested in the executors by that paragraph, and that the real property must be regarded as equitably converted into personalty; and, 3. That the beneficiaries being all of full age can waive the exercise of the power of sale and elect to take the property as it now is. There is no dispute as to one-half of the residuary estate disposed of by that paragraph, it being conceded that upon the death of the widow it vested in the testator's daughter, subject only to the power of sale.

This leads to the inquiry whether a valid trust was created as to the other one-half which was intended for the benefit of the two granddaughters. If the provisions of the will are sufficient to disclose a plain intention to create a trust in their favor, then a trust must be held to have been intended. But that intent must plainly appear, either from the language employed or by necessary and undoubted implication. That this will was inartificially and unskillfully written, leaving the intent and meaning of the testator obscure and uncertain, is manifest. Still, unless it is so vague and indefinite as to render its purpose and meaning incomprehensible, it is the duty of this court to interpret it in accordance with the intent of the testator so far as it can be ascertained.

If any express trust was constituted it was by the sixth paragraph. That the testator intended to give to each of his granddaughters one-fourth of the residue of his estate absolutely or in trust, there can be no doubt. In determining whether a trust was intended, the fact that the will was not prepared by a lawyer or by a person familiar with the technical terms usually employed in such instruments or with the requisites of a valid trust, is to be borne in mind, and the fact must be taken into consideration that the scrivener had no accurate knowledge as to the meaning of the words " trust," " trustee " or " trust fund," as is evident from a consideration of the whole instrument. It is clear from a reading of this will that the word " trustees " was not used or intended to be employed in its technical and general sense, as all the duties they were to perform were of an executorial character. That such was the nature of the trust reposed in them seems to be practically admitted, as they were appointed executors by the Surrogate's Court and in that capacity brought this action. Again, an examination of the fourth and seventh paragraphs discloses that the words " trust " and " trust fund " were used with little conception of their accurate or technical meaning.

By the sixth paragraph the testator first provides for the conversion of all his property into cash. He then directs that one-half of it shall be deposited with a trust company to be selected by his executors, at the best rate of interest obtainable, to be held as a trust fund by the trust company, the principal not to be withdrawn by either of the beneficiaries. Then follows this sentence : " The fund is to be the property of my two granddaughters, Sadie Trask Sturges and Adele Sturges, in equal proportions, who may by will devise and bequeath the same, or failing to make will, it shall go to their heirs-at-law." Here the sentence ends, and in the following sentence he declares that the trust company shall pay the interest on the fund so deposited quarterly, in equal proportions, to his two granddaughters. The provision that the fund was to be their property is entirely inconsistent with the theory

of an intended trust  That sentence clearly indicates a pur-
pose to give to his granddaughters one-half of his residuary
estate in equal proportions.   Hence, the question arises
whether the other provisions of the will are such as to justify
us in holding that that provision is so modified or limited as to
disclose a purpose to create a trust and to give them a life
estate only.   Where, in a will, there is a plain gift, it will not
be cut down or limited by another clause of doubtful meaning.
(*Campbell* v. *Beaumont*, 91 N. Y. 464 :  *Van Horne* v. *Camp-
bell*, 100 N. Y. 287.)

It is contended that the provisions immediately following
the words which import an absolute gift, to the effect that the
legatees shall have power to devise and bequeath such prop-
erty and in default thereof it shall go to their heirs, constitute
a modification of the previous clause, or at least raise an
implication that the gift was not intended to be absolute.
We think no such modification or implication was intended
or is justified.   Those provisions, although perhaps unusual and
unnecessary, are not actually inconsistent with the provision
that the fund was to be the property of the granddaughters.
It merely provides that they may dispose of it by will, or in
default of a will that it shall pass to their heirs.   Although,
if the gift was intended to be absolute, that provision was
unnecessary, still, when we consider that the will was pre-
pared by one not learned in the law, may it not with equal
propriety be inferred that, under an erroneous conception of
the law, he inserted that clause, intending thereby to give them
the absolute title so that they might dispose of it by will, or
in default thereof it would pass to their next of kin or heirs
at law ?   Under the circumstances, we think it may quite as
well be said that such was his intention as that his purpose was
to reduce the gift to his granddaughters to a life estate. . The
clear and decisive words of absolute gift contained in that
sentence are not modified or the gift reduced to a life estate
by any such implication. (*Banzer* v. *Banzer*, 156 N. Y.
429.)  Obviously, the phrase " heirs at law " was not used
in its technical sense, but to indicate the persons to whom the

property would descend or between whom it would be dis-
tributed in case of intestacy. But it is said that the money
thus deposited was to be held as a trust fund by a trust com-
pany to be selected, which was to pay the interest to the grand-
daughters. Still, as the money was to be paid to the trust
company by the executors and was then to be the property of the
granddaughters the words " to be held as a trust fund " were
not wholly inappropriate, as they were employed to describe
a fund paid by one person for the benefit of others. To
that extent it may be said that a trust relation was intended
as between the trust company and the testator's granddaugh-
ters. The fund thus deposited with the trust company was to
be the property of the granddaughters, and so long as it
remained on deposit the company was to pay them the interest
upon it quarterly. It is also true, as claimed, that a pre-
ceding clause provides that the sum so deposited is not to be
withdrawn by either of them. That provision immediately
precedes the sentence which contains words indicating an intent
to make an absolute gift, and, if held to mean that it should
never be withdrawn by them, is utterly inconsistent with it.
The language is that the principal is not to be withdrawn
by either of the beneficiaries. May this not have been a
mere suggestion intended to apply only to the time during
which the fund was being accumulated by converting the
property into cash? As that provision does not necessarily
prevent the withdrawal of the fund by both, it may well
have been the purpose of the testator to provide that neither
of his granddaughters should withdraw the principal during
the time of its accumulation, but that it should remain as one
fund until the whole amount was deposited and then might
be withdrawn by both and otherwise invested. This is ren-
dered more probable by the fact that one of them enjoyed
his confidence, was familiar with his business, knew more
about it than any one except himself, and was one of the
executors as well. That the fund to be thus accumulated
and deposited was to be the property of his two grand-
daughters he has plainly and definitely declared, and we

think there is not enough in the other provisions of the will to authorize the court to disregard that plain provision and declare that a trust was intended. Moreover, if those provisions cannot be thus harmonized, then we think that the later one making the gift absolute should prevail.

Nor, upon examining the whole will, do we think it can be fairly and reasonably said that it was the intent of the testator that a trust company to be selected by his executors should become a trustee for the portion of his property intended for his granddaughters and that they should have a mere life interest therein. The relation of the trust company as described in the will was to be that of a depositary, and the selection was to be determined only by the rate of interest that could be obtained, which is hardly a basis that a business man would adopt for the selection of a trustee of a large and valuable estate. It seems more consistent with an intent to have the money temporarily deposited during the time required for the sale of the property and its conversion into cash, than with the idea of an intended permanent trust. If that was his purpose, the testator might well have suggested that the fund thus to be accumulated should not be withdrawn by either of the beneficiaries until its accumulation was complete. Such an interpretation is consistent with the intent that the fund should become the absolute property of the two granddaughters, in possession as well as in interest, and that during the time of such temporary deposit the trust company should pay the interest upon the fund deposited, at the time and in the proportions mentioned.

Moreover, it is hardly conceivable that it could have been the intent of a business man, "a large and experienced operator in real estate," to provide that some unknown trust company should become a trustee of one-half of his large estate, have the possession and use of the trust property, paying only such interest as it should itself determine, with no regard to the amount which it should receive as income therefrom. To impute to the testator such a purpose would, at least, impugn his business qualifications and disclose a situa-

tion which it is impossible to believe he could have contemplated. Indeed, it seems almost incredible that he could have intended to place his granddaughters, whom he desired to have the benefit of one-half of his estate, in a position where, during their lives, they were at the tender mercies of a corporation upon which none of the ordinary duties of a trustee was imposed and which was bound to pay to them only such interest as it might determine. We concur in the statement contained in the respondents' brief that "It is unreasonable to suppose that his intention was that enormous sums of money should remain simply on deposit in a trust company at trust company rates during the lives of these two young women," and yet, if those provisions are to be construed as creating a trust, that is precisely what he did. The respondents, however, contend that it is the duty of the court to transpose some of the provisions of the sixth paragraph, so as to render it more probable that a trust was intended. While words and sentences may sometimes be transposed to carry out the obvious intention of a testator, we have no authority to transpose the provisions of this will to carry out some conjectural intention which is not expressed or clearly inferable from the language employed.

The appellants also contend that, if the sixth paragraph of the will be construed to create a trust, it would be invalid as suspending the absolute ownership of the property for a period not limited by two lives in being. (*Underwood* v. *Curtis*, 127 N. Y. 523; *Garvey* v. *McDevitt*, 72 N. Y. 556.) They also claim that intestacy would result, and the defendant Sarah S. S. Sturges would take the entire residuary estate as next of kin. If this contention be correct, and the claimed trust would be void, and thus the obvious intention of the testator to give his granddaughters one-half of his estate would be defeated, it would afford another reason why this court should not disregard the plain provision that one-half the residuary estate should be their property and imply a trust from the uncertain language of the other provisions of the testator's will. If, upon an examination of a will, a

general scheme can be found to have been intended, which is consistent with the rules of law, and, hence, valid, it is the duty of the court to effectuate the purpose of the testator, and where, without violence to such intention, two possible constructions may be given, one which will sustain the intended legacy and the other which will defeat it, the former will be adopted. *Roe* v. *Vingut*, 117 N. Y. 204, 212.) As in this will there is no express provision creating a trust, one ought not to be implied or raised by construction which would be invalid at the moment of its creation. (*Smith* v. *Edwards*, 88 N. Y. 92, 102; *Woodward* v. *James*, 115 N. Y. 346, 357; *Henderson* v. *Henderson*, 113 N. Y. 1, 11; *Bliven* v. *Seymour*, 88 N. Y. 469, 477.)

We do not, however, deem it necessary to pass upon the question of the invalidity of such a trust, or to determine the effect of its validity, for independently of that consideration we find in the language of the will no sufficient provision to establish an intention to create a trust, or which would justify us in holding that such an intent is to be necessarily implied. We think the intent of the testator, as disclosed by his will, was to give absolutely to each of his granddaughters one-fourth of his residuary estate, and that he had no intent to give them merely a life estate or to create a trust for their benefit. Although the will of the testator is somewhat uncertain and obscure, yet, as it is manifest that the scheme of his will was to provide for his wife, to give certain legacies mentioned, and then to divide the residue of his property between his daughter and two granddaughters, it is the duty of this court to carry that purpose into effect. It follows that upon the death of the testator's widow, the legal title to all his remaining property vested, one-half in his daughter and the other one-half in his two granddaughters, subject only to the power of sale conferred upon his executors which operated as a conversion of his real estate into personalty.

This leaves for consideration the question whether, inasmuch as the power of sale, so far as it remains unexecuted, is for the benefit of the three residuary legatees who are the

only parties beneficially interested, they have a right to waive the execution of the power and take the land undisposed of in place of its proceeds. In this case there is no doubt as to the validity of the power of sale. The title to the residuary estate vested in the daughter and granddaughters of the testator, subject only to such power. That the defendants, who are all of full age and of undoubted competency, have made such election, is plainly disclosed by the record. On April 13, 1899, they served upon the plaintiffs a notice by which they signified their election and an intention to take the real estate of which the testator died seized free from any and all powers of sale given to the executors under or by virtue of the testator's will.

It seems to be well settled that where land is directed to be sold and the proceeds distributed, the parties beneficially interested may, if competent and of full age and the gift is not in trust, elect, before the conversion has actually taken place, to take the land, and where they have so elected and the election has been made known, the power of sale in the executors becomes extinguished and they cannot thereafter lawfully proceed to execute it. This doctrine is said to be founded upon the presumption that such power was given for the benefit and convenience of the devisees and legatees, and was not intended to be imperative so as to prevent the beneficiaries from taking his bounty, except in the precise form in which the property would exist after the conversion. (*Mellen* v. *Mellen*, 139 N. Y. 210, 220; *Hetzel* v. *Barber*, 69 N. Y. 1; *Prentice* v. *Janssen*, 79 N. Y. 478.) We think that the defendants having elected to take the land and notified the plaintiffs of their intention, the power of sale in the executors was extinguished and they cannot now execute it.

These considerations lead to the conclusion that the judgment appealed from should be reversed and a new trial ordered, with costs to the appellants to abide the event, payable out of the estate.

PARKER, Ch. J., BARTLETT, HAIGHT, VANN, CULLEN and WERNER, JJ., concur.

Judgment reversed, etc.