Cohn, J.
This is an appeal from a decree of the Surrogate’s Court of New York County construing the will of Eobert Grigg Eeese, deceased, made in proceedings for the judicial settlement of the account of trustees under the will. One group of appellants appeal from the decree only insofar as it construes that portion of deceased’s will affecting their interests. This group is composed of: (1) representatives of J. Theus Munds, deceased, (2) Louis de l’Aigle Munds and (3) trustees under the will of Harmon Smith, deceased.
There is also an appeal from the decree by executors of the life beneficiary who is the deceased widow of Eobert Grigg Eeese, insofar as it determines that the proceeds of the sale of securities received in exchange for $25,000 in 4% coupon bonds of Chicago & Northwestern Eailway Company were in whole principal and that no part of such proceeds should be allocated to the life beneficiary’s estate.
We consider first the appeals affecting the three legatees. The underlying question as to each is the same.
Eobert Grigg Eeese died on October 18, 1926, leaving a will which was duly admitted to probate. His residuary estate was placed in trust for his widow Louise for fife under paragraph “ Third ” of his will. There is here involved the construction of paragraph “ Ninth ” which makes provision for seventeen persons, including appellants, and reads as follows: “ Ninth: Upon the death of my said wife, Louise del’aigle Eeese, I give, devise and bequeath the following persons the gifts and sums set opposite their respective names, which sums are to be invested and the income therefrom to be paid in semi-annual installments, for the terms of their natural lives. The said sums can be willed to whomsoever they wish at their demise. * * * To J. Theus Munds twenty thousand dollars ($20,000). To L. del’Aigle Munds twenty thousand dollars ($20,000). To Dr. Harmon Smith twenty thousand dollars ($20,000). * * * ”
Louise, the widow of Dr. Eeese, died on June 29, 1945. J. Theus Munds survived the testator but predeceased the. widow, leaving a will dated May 15, 1933. The J. Theus Munds *40 will gives, devises and bequeaths his residuary estate including “ any and all property over which I may have any power of testamentary disposition ” in trust to pay the income therefrom to his daughter for life, with provision for payment of one half of the principal to her when she attained the age of twenty-five.
Dr. Harmon Smith died on December 11, 1934. He left a will which placed his entire residuary estate (including all property which he had the right to dispose of by his will) in trust for his son until the latter became thirty years of age.
Appellant Louis de l’Aigle Munds survived both deceased and his widow.
The Surrogate decided that it was Dr. Reese’s intention to create a trust for the benefit of his widow for life and secondary trusts for the benefit of the persons named in paragraph “ Ninth ” of his will for their respective lives with an unlimited power of appointment to dispose of the principal thereof upon death; that the exercise by J. Theus Munds and Dr. Smith of their powers of appointment respectively given to them under paragraph “ Ninth ” of Dr. Reese’s will was invalid and in violation of section 11 of the Personal Property Law, since by creating a trust in the one instance for a son and in the other instance for a daughter they had attempted an unlawful suspension of the right to alienate the amount which each had the power to dispose of by will; and that the trust funds for J. Theus Munds and Dr. Smith were to be applied to make good the validated gifts under the will. It is urged that the Surrogate reached a conclusion for which no one of the parties contended; that such disposition totally destroys the effect of the testator’s expressed intention; and that it deprives the main beneficiaries of the disposition of their respective legacies.
The language of the will of Dr. Reese we think indicates that it was his intention to make outright bequests to the persons named in paragraph “ Ninth ”. In addition to using the words “ I give, devise and bequeath ” the testator refers to the bequests made to the individuals therein as “ the gifts and sums set opposite their respective names ”. In paragraph “ Tenth ” wherein the testator disposed of the principal of the trust created for the benefit of his wife to the extent that he had not previously disposed thereof under paragraphs ‘ ‘ Fourth ’ ’ to “ Ninth ” inclusive, he states that the residue and remainder of his estate after the death of his wife is to be given to the New York Eye and Ear Infirmary “ after the above mentioned bequests have been satisfied ”. (Italics supplied.) The abso *41 lute nature of the gift to each of these beneficiaries is reaffirmed by the provision set forth in paragraph “ Ninth ” of the will that “ The said sums can be willed to whomsoever they wish at their demise. ’ ’
It is to be noted that there is no alternative provision for the disposition of the bequests provided for under paragraph “ Ninth ” in the event that the amounts bequeathed are not disposed of by will of the legatees. In the absence of such an alternative disposition it would seem that it must have been in the mind of the testator that the sums bequeathed by him under paragraph “ Ninth ” would constitute the property of the various legatees named therein.
Dr. Reese, who was not a lawyer, concededly prepared this will himself. The language employed by this amateur draftsman should be interpreted from a layman’s point of view. Moreover, it is to be observed that there is no gift to trustees' as set forth in paragraph “ Third ”. The phraseology there shows that when the testator wished to make a gift in trust he knew precisely what expressions to use. He said:
‘‘ Third: All the rest, residue and remainder of my property and estate, real and personal, I give, devise and bequeath to my executors and trustees hereinafter named, for the following purpose:
“ To invest and reinvest such property, and the proceeds thereof, and to pay the income derived therefrom, in semiannual installments to, my devoted wife, Louise del’aigle Reese during the term of her natural life.”
In striking contrast is the clearly dispositive language employed in paragraph “ Ninth “ Upon the death of my said wife, * * * I give, devise and bequeath the following persons the gifts and sums set opposite their respective names, * * * There is no gift to trustees as in paragraph “ Third ”. We have words of absolute gift followed by directions of vague meaning to invest and pay income semi-annually.
It has been held repeatedly that an outright bequest may not be cut down by subsequent words unless an intent to do so is unmistakably clear. (Trask v. Sturges, 170 N. Y. 482; Campbell v. Beaumont, 91 N. Y. 464; Van Horne v. Campbell, 100 N. Y. 287.)
In Trask v. Sturges (supra) the testator directed that his trustees convert his estate into cash and deposit one half of the proceeds in a trust company “to be held as a trust *42 fund by the trust company ”. The fund was declared by the testator “ ‘ * * * to be the property of my two granddaughters * * * who may by will devise and bequeath the same * * * ’ ”. (P.491.) The court held that the provision that the funds were to be their property was entirely inconsistent with the theory of an intended trust. At page 492 the court said: ‘ ‘ It is contended that the provisions immediately following the words which import an absolute gift, to the effect that the legatees shall have power to devise and bequeath such property and in default thereof it shall go to their heirs, constitute a modification of the previous clause, or. at least raise an implication that the gift was not intended to be absolute. We think no such modification or implication was intended or is justified. Those provisions, although perhaps unusual and unnecessary, are not actually inconsistent with the provision that the fund was to be the property of the granddaughters. It merely provides that they may dispose of it by will, or in default of a will that it shall pass to their heirs. Although, if the gift was intended to be absolute, that provision was unnecessary, still, token tve consider that the will was prepared by one not learned in the law, may it not with equal propriety be inferred that, under an erroneous conception of the law, he inserted that clause, intending thereby to give them the absolute title so that they might dispose of it by will, or in default thereof it would pass to their next of kin or heirs at law? Under the circumstances, we think it may quite as well be said that such was his intention as that his purpose was to reduce the gift to his granddaughters to a life estate. The clear and decisive words of absolute gift contained in that sentence are not modified or the gift reduced to a life estate by any such implication. (Banzer v. Banzer, 156 N. Y. 429.)” (Italics ours.)
Another cause in point is Matter of Harris (269 App. Div. 904, affd. 295 N. Y. 764). In construing language similar to that which was employed in Dr. Reese’s will, the court at page 905 said: “ The language of the will relating to the share of the daughter in the principal of the fund appears in language similar to that relating to the share of the son, upon the death of the mother. In our opinion the determination of the Surrogate in 1926 was proper as to the one half of the principal then involved, and a similar determination is now" proper in reference to the other one half of the principal presently involved. Upon that interpretation, Nathalie Harris became the *43 absolute owner of one half of the fund upon the death of her mother and it now passes under her will in the manner therein provided for. Where there is a plain gift in a will, as in this case, it will not be cut down or limited by another clause of doubtful meaning. (Trask v. Sturges, 170 N. Y. 482, 492.) This construction accords with what we consider to be the obvious intention of the testator. That intention is the paramount consideration.”
In Matter of Minford (N. Y. L. J., Oct. 27, 1937, p. 1366, col. 6) the will provided that $20,000 was to be invested for each of four daughters in good dividend paying securities, said daughters to draw the interest on same during their lifetime and further providing that said principal and interest shall be free from the debts, control or interference of any husband of the daughters. In holding that the will created an outright gift of $20,000 to each of the testator’s daughters, Surrogate Foley said: “ It seems clear that the testator intended an immediate and final distribution of his estate under the first and second paragraphs of the will. The gifts in each of these paragraphs are independent of each other and in no way connected. The outright bequest of $20,000 to each daughter in the first paragraph of the will is not destroyed by the subsequent language quoted above. This language merely qualifies the method of enjoyment of the gift without affecting the vested interest of each daughter in the principal sum. (Matter of Sackett, 201 App. Div. 58; Felter v. Ackerson, 35 App. Div. 282; Matter of Gould, 144 Misc. 670; Matter of Smith, 128 Misc. 97.) On the death of each daughter the fund set aside for her benefit passes as part of her estate.”
The law is well settled that the intention of the testator as indicated in the will must govern. (Salter v. Drowne, 205 N. Y. 204, 212.)
In our view the testator’s intention as expressed in the will here was to make an outright bequest of $20,000 to each of the three legatees.
As to that phase of the appeal which deals with the question of the allocation of a portion of the proceeds of new securities received by the trustees of Dr. Eeese in exchange for $25,000 Chicago & Northwestern Eailway 4% coupon bonds due November 1, 1987, we think that a part of the net proceeds of the sale of the new securities should have been allocated to income.
The facts are as follows: Among the trust assets held by the trustees of Dr. Eeese were these bonds inventoried at $23,495. *44 There was a default in interest payments due on November 1, 1935, which continued until the reorganization of the railroad in 77B (Bankruptcy Act, § 77B; U. S. Code [1934 ed.], tit. 11, § 207) proceedings on January 1, 1939. At the time the plan of reorganization was before the United States District Court for judicial approval that court had the report of the Interstate Commerce Commission, whose function it was to examine and approve the plan since it involved the reorganization of a railroad. The commission’s report states that the plan contemplated a distribution of new securities to holders of the old outstanding bonds “ in percentages of principal and unpaid interest to January 1, 1939 ”. While there is no similar statement in the plan itself, the values assigned to the new securities received correspond to the face value of the bonds held by the trustees plus the accrued defaulted interest. In other words, on a $1,000 4% bond held by the trustees, there was due and owing $146.67 in interest. Each bond, therefore, represented a claim on January 1, 1939, of $1,146.67. In satisfaction of that claim the trustees received on each bond $202 of mortgage bonds, $470 of income bonds, $434 of preferred stock and $41 of common stock, for a total of $1,147. Analysis of the distribution of new securities to the other classes of the general mortgage bonds shows that past due interest claims were provided for as such. Thus, holders of 5% bonds received a total of $1,183 which represented principal payment of $1,000 plus $183.33 for the accrued interest which was owing; so too valuations assigned to the 31/2% and 4%% and 4% % bonds varied with the amount of unpaid interest on each class of bonds. Clearly a definite and readily ascertainable portion of the new securities issued to the trustees in exchange for the old 4% bonds was measured •and allowed on account of unpaid interest on the bonds to which the life beneficiary would have been entitled if the interest had been paid as it became due. The income beneficiary, we think, should have received her proportionate share of the proceeds of the sale of the new securities. The net proceeds of the sale was $18,188.06. If objectant’s claim is allowable, it is conceded that she is entitled to .1279 of the net proceeds, which amounts to $2,326.25.
What, in our opinion, distinguishes the transaction in this case from that set forth in the Matter of Otis (276 N. Y. 101) is the fact that the unpaid interest claim was sold with the bond and that the purchase price in new securities was in part measured by the unpaid interest claim. As the reorganization *45 plan was set up and carried out, the new securities received by the trustees were in a very literal sense a product of the unpaid interest claim, which until the surrender of the old bonds in the reorganization, the trustees held for the account of the life beneficiary.
For all of the foregoing reasons, the decree should be modified insofar as it fails to construe paragraph “ Ninth ” as conferring upon the appellants gifts in fee absolute, and insofar as it fails to allocate to income the sum of $2,326.25 from the proceeds of the sale of the Chicago & Northwestern Railway securities, with costs to appellants payable out of the estate.
The decree should be modified accordingly.
Peck, P. J., Dobe, Callahan and Van Voobhis, JJ., concur.
Decree, so far as appealed from, unanimously modified insofar as it fails to construe paragraph “ Ninth ” as conferring upon the appellants gifts in fee absolute, and insofar as it fails to allocate income in the sum of $2,326.25 from the proceeds of the sale of the Chicago & Northwestern Railway securities, with costs to the appellants payable out of the estate. Settle order on notice.