OPINION OF THE COURT
Louis D. Laurino, S.
This is a contested proceeding for judicial settlement of the executors’ account, which was tried by the court without a jury.
Decedent in this estate died on September 18, 1981 leaving a fairly modest estate consisting of $33,000 in personal property and a house and lot in Queens County valued on date of death at $140,000. Decedent’s handwritten will which can best be described as a love letter to her estranged grandchildren was admitted to probate on October 22, 1981 and by its terms it left her entire estate to be shared equally by her four grandchildren with the exception of several small bequests. *57 Her will ended with a plaintive note, "I am so sorry I missed seeing you all grow up. I wish you every happiness.” But such was not to be because of the actions of one individual.
Normally such an estate which presented no intricate legal problems should have been fully administered and distributed in short order. This estate, however, did not proceed normally. Instead over the past three years this estate either directly or tangentially has been involved in constant litigation in this court, in the Supreme Court, the Appellate Division and the Federal District and Court of Appeals and as a consequence it remains still unsettled. The protracted litigation did not occur because of disagreement among the beneficiaries or between the beneficiaries and the fiduciaries as was revealed at the trial. The unnecessary litigation was initiated by the attorney for the executors who has single-handedly ground this estate to a halt and exacerbated the relationship between the beneficiaries and the fiduciaries. This attorney’s rejected claim for legal fees was one of the main issues tried by the court and rather than characterize his actions in conclusory fashion it would be best to set forth a brief recitation of the facts.
As stated above, the will was admitted on the consent of all interested parties. From the beginning all the residuary legatees made it unequivocally clear that they did not want decedent’s real property sold but instead wanted to retain title as it passed to them by operation of law on the probate of the will (see, Matter of Fello, 88 AD2d 600, affd 58 NY2d 999). In line with their desire they entered into possession of the premises. On the advice of their counsel, the executors demanded return of possession and insisted on their right to sell the real property as a residuary bequest pursuant to EPTL 11-1.1 even though sale of the property was not necessary to pay administrative expenses. Executors’ attorney submitted a petition to court "to discover” and gain possession of the real property. This petition was not entertained by decision of court dated February 24, 1982 which stated that the relief requested "was not within the purview of SCPA Sec. 2103”. (It should be noted that the court’s decision predated the landmark decision of the Court of Appeals in Matter of Piccione, 57 NY2d 278.) The fiduciaries through their attorney moved to reargue this decision and the beneficiaries on their own behalf made an application to the court to prohibit the sale or disposition of the real property. The court granted the application by the legatees (see, Matter of Fello, supra; see also, Trask v Sturges, 170 NY 482), and by order dated April 20, 1982, it *58 prohibited sale of the premises without further order of the court and directed the executors to render and file an account. An account was prepared and submitted to the accounting department of this court. The papers were returned to the executors with a four-page handwritten note listing in detail the corrections that should be made. The court finds that up to this point in time the attorney for executors was acting with his clients’ consent and in their best interest in delineating and protecting their legal rights and obligations as executors of decedent’s will. It is worth noting that all that remained for the attorney to do was to make the requested corrections and this matter could have been finalized. Instead without prior authorization or consent of his client the attorney unilaterally decided on his own frenetic and counterproductive course of action.
Without authorization or consent an appeal was taken by the attorney, albeit in his clients’ name, from this court’s order of April 20, 1982 and simultaneously a CPLR article 78 proceeding was commenced before the Supreme Court to compel the Surrogate’s Court to accept the executors’ original petition for possession of real property and the defective voluntary account. When the Supreme Court refused the relief requested an appeal was taken from that court’s order. Both appeals were denied (see, McGinty v Laurino, 95 AD2d 847; Matter of Sherburne, 95 AD2d 859). Motion for leave to appeal to the Court of Appeals was also denied. As a result of these affirmances, suit was commenced in the Federal District Court by the attorney individually pursuant to 42 USC § 1983 alleging that various defendants including the legatees and executors of this estate; and all the Judges of the Surrogate’s Court, Supreme Court and the Appellate Division participated in a "conspiracy” to violate the plaintiff attorney’s constitutional civil right "to win the case”.
On the motion of defendants this Federal suit was dismissed for failure to state a cause of action (see, Cataldo v Laurino, US Dist Ct, EDNY, Feb. 1, 1984, CU-83-3948, Sifton, J.). A motion to reargue this decision was denied as "frivolous” (see, decision Feb. 28, 1984, Cataldo v Laurino, supra). These decisions were appealed and affirmed by the Court of Appeals.
The magnitude of this situation became apparent to the executors when according to the testimony in July of 1983 their attorney telephoned them "at midnight and said, 'You better get another lawyer or you’re going to jail!’ ” because they were about to be punished for contempt. The fiduciaries *59 did in fact retain a new attorney who prepared the present account which rejected the claim for counsel fees for $81,000 by the original attorney for the executors. The fee requested was based on the claimant attorney’s $100 an hour time charge for not only prosecuting the unauthorized appeals and article 78 proceeding but also for.spending 2414 hours as indicated by the bill of particulars in arranging the decedent’s funeral and for 71 hours of legal work to have the decedent’s will admitted to probate by means of waiver and consent.
An attorney with general authority to represent a client in a case has the implied authority to do whatever in his judgment is necessary to advance his client’s interest (Shaft v Phoenix Mut. Life Ins. Co., 67 NY 544) including the authority to do all acts incidental to prosecution and management of the case (Katzenberg v Satz, 129 Misc 218) and to take any and all proceedings he deems necessary (Shaft v Phoenix Mut. Life Ins. Co., supra). This authority is not, however, unlimited and where an attorney is retained to prosecute or defend an action there is no implied authority in the event of a judgment adverse to the client, to prosecute review proceedings by appeal and to bind the client for costs and expenses incidental thereto. (See, discussion in 3 NY Jur, Attorney and Client, § 43; 5 Am Jur, Attorneys at Law, § 107, at 325.) In the present case the court finds that no authority either expressed or implied was given the claimant attorney to perform legal services on behalf of the executors after April 20, 1982. As succinctly stated by the executor in response to the question posed by the claimant, "To this date I still don’t know how many appeals you have taken!” The court can empathize with this answer having prepared the outline above which is by no means all inclusive of the actions of counsel in this estate.
An attorney-at-law is a sworn officer of the court and also has a duty to represent a client zealously within the bounds of law. He does not fulfill either duty when he treats, as he so testified, every adverse judicial decision and order as "unconstitutional” and "null and void”. Nor does he fulfill his duty as advocate and advisor to an executor by running roughshod over rights and desires of the legatees in an estate who are after all the objects of decedent’s bounty and with whom she was primarily concerned. This court is constrained from any further comment on the acts of counsel and the damages incurred therefrom because of the malpractice cause of action currently sub judice before the Supreme Court. Suffice it to say that the claimant attorney will not be recom *60 pensed for his services performed after April 20, 1982. As to the value of the services performed prior to that date the court finds that $1,000 is the reasonable value of services performed considering the issues confronting counsel, the size of the estate, and the results accomplished plus permissible disbursements of $287.40. In view of the fact that the claimant has already been paid $2,500, he is directed to return $1,212.60 to the estate.
Aside from the objections filed to this rejected claim for counsel fees by the attorney-claimant, objections were also filed by the legatees to the executors account. Certain of these objections were eliminated prior to trial, to wit: objection No. 1 was withdrawn; objection No. 5 dealing with failure to allocate taxes was conceded by petitioner; and objection No. 9 was vacated by order of the court. The remaining objections seek to deny the executors their commissions and surcharge them for losses sustained and legal fees incurred because of the acts of their attorney-claimant as outlined above. This court is well aware of the decisions cited by counsel for the legatees wherein fiduciaries who violate their fiduciary duty are subject to surcharge for damages and/or denial of commissions (see, e.g., Matter of Schaich, 55 AD2d 914). Each of the cited decisions based surcharge and damage on the fiduciaries’ lack of good faith. In view of the court’s finding that the acts of the executors’ attorney which resulted in loss and delay were done without the prior consent or authorization of the executors, these objections must be denied. Just as in any other principal-agent relationship, a client may not be held responsible for the acts of an attorney-agent who proceeds to act beyond the scope of his authority, expressed or implied. While the objections allege complicity by the executors in acts of their counsel and open hostility toward the legatees, the proof was to the contrary. Again the fiduciary exhibited his ability to elucidate succinctly his innocence of the whirlwind of legal activity created by counsel when he stated, "I need this like a hole in the head”. Based on this failure of proof the remaining objections are denied. On consent of the petitioner, counsel for the legatees also requested that his fee be fixed by the court. The fee is allowed in the amount requested, however, in line with the holding above the legatees’ demand that the fee be paid personally by the executors is denied.
Account settled.